[L. A. No. 5337.   Department Two.—August 12, 1920.]

FINLAY A. McNUTT, Executor, etc., Respondent, v. JOSEPH E. HANNON, Appellant.

[1] PARTNERSHIP — ATTORNEYS AT LAW — SERVICES AFTER DEATH OF PARTNER—PARTNERSHIP BUSINESS—SUFFICIENCY OF EVIDENCE.—In this action against the surviving partner of a law partnership for an accounting of fees received for services performed by the defendant after the death of his partner in the foreclosure of mortgages due an estate for which the partnership was attorney, the evidence as to the relationship of the parties, the delivery of the mortgages, the computation of interest, and the order of a foreclosure search sufficiently sustain the finding that such fees were partnership assets.

[2] ID.—EMPLOYMENT BY ADMINISTRATOR — COMPLETION OF SERVICES BY SURVIVING PARTNER—PARTNERSHIP BUSINESS.—The employment of a law partnership by an administrator to represent him contemplates the completion of the administration, and the fees for such services belong to the partnership, although not completely performed until after the death of one of the partners.

[3] ID.—EMPLOYMENT OF PARTNERSHIP AT AGREED FEE—SERVICES BY SURVIVOR AFTER DEATH OF PARTNER—ACCOUNTABILITY TO PARTNERSHIP.—Where a law partnership was employed in a case at an agreed fee, and after the death of one of the partners the surviving partner conducted an appeal and received less than the agreed fee for all services, he was bound to apply the entire amount received to the partnership fee, regardless of whether such appeal was partnership business.

[4] ID.—INDEBTEDNESS OF CLIENT—SETOFF.—A client who is indebted to a law partnership cannot set off the individual debt of one of the partners to him against the partnership debt.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Grant Jackson, Judge.   Affirmed.

The facts are stated in the opinion of the court.

J. Vincent Hannon for Appellant.

Haas & Dunnigan for Respondent.

2. Rights of estate of law partner in compensation for business unfinished at time of his death, note, 66 L. R. A. 821.

WILBUR, J.—Cyrus F. McNutt and J. E. Hannon, the defendant, were law partners from 1897 until the death of the former, May 31, 1912. The plaintiff, as executor of the will of the deceased partner, brought this action against the surviving partner for an accounting and recovered judgment for $9,292.70, being one-third of the fees that the trial court found resulted from the partnership. Defendant appeals from the judgment on a bill of exceptions, and the plaintiff, while claiming that there should have been an equal division of the $27,878.10 fees received by the surviving partner, does not appeal.. The court found that the plaintiff is "equitably entitled to receive one-third" thereof.

The defendant claims that the evidence is insufficient to sustain the finding that the partnership existed at the time of the death of plaintiff's testator, and the finding that the fees defendant was required to account for were received for the partnership; and even if they were for partnership business, that the decision of the trial court was inequitable, inasmuch as most of the work for which the fees were paid was done by defendant after the death of his partner. The first claim of the defendant is that the partnership was dissolved about thirty days before the death of McNutt. It is sufficient upon this point to say that the evidence abundantly supports the conclusion of the trial court that the partnership continued until his death. The partners continued to occupy the partnership office and transact partnership business until McNutt became too ill to continue in an important trial then in progress. The fees divided by the decree were largely for services rendered in the *Estate of Andrew Glassell,* which had been in probate from 1901 until finally distributed after the death of plaintiff's testator. The estate was appraised at about a million dollars. The fees were partly from mortgage foreclosures begun for the administration of said estate after the death of McNutt. One foreclosure proceeding, No. 94,486, in the superior court, was begun September 18, 1912, and the attorney fee collected therein was eight thousand dollars. In another, No. 94,487, begun the same day, the fee received was $4,833, and in action No. 97,715, begun January 11, 1913, the fee was four thousand dollars, and in action No. B6406, begun November, 1913, the fee allowed was five hundred dollars. The defendant claims that each foreclosure resulted from a sepa-

rate and distinct employment after the death of his partner. We will only state the evidence that tends to support the findings. The partnership represented Hugh Glassell and Andrew Glassell, executors of the last will and testament of Andrew Glassell, deceased, from February 16, 1901, to January 10, 1912, when, upon their resignation, the Southern Trust Company was appointed as their successor at the instance of the partnership acting for the heirs, and thereafter the partnership continued to act for the successor in all matters pertaining to the estate, but without any express contract so to do. The foreclosure of the above-mentioned mortgages, as well as other work for which fees were claimed by the defendant, was an essential part of the work of preparing the estate of Andrew Glassell for distribution and the fees therefor were properly allowable to the administrator in its account as such, and not otherwise. There is other evidence supporting the conclusion that the foreclosures were partnership business. On January 20, 1912, the defendant wrote to the newly appointed administrator as follows: ''Replying to yours of January 18, *in re* mortgages of Lawrence, Hamilton, Cary, Pixley, Rankin and Brown. . . . We may also observe in this connection that before the resignation of Hugh and Andrew Glassell as executors, the other heirs of the estate insisted most strenuously that the mortgages should be foreclosed for the failure of the mortgagees to make the payments as they became due. We have not been advised of any change of attitude of the heirs, and understand that they still insist on that course being pursued. Referring to your request for the address of the parties whose notes you hold, we have some of them and are endeavoring to obtain the others, and will send them as soon as possible.'' On February 2, 1912, an order of the superior court was made on the application of the administrator, presented by the partnership, permitting the administrator to obtain a correct certificate from the Title Insurance and Trust Company showing a correct description of the real property belonging to the estate of decedent, with plats, etc. On February 5, 1912, the defendant, by written order, instructed the Title Insurance and Trust Company to make ''Foreclosure search for mortgages as below, in your usual form to property in Los Angeles County, California.'' Then follows book and page of records of twelve mortgages, including all those for which

foreclosure fees are claimed by the plaintiff. The certificates of each mortgage search were separate, and shortly after each was delivered a foreclosure was begun to foreclose the mortgage covered by the certificate, and the cost of the certificate was claimed and recovered with interest in the foreclosure. As the fees allowed in the foreclosure cases were found by the trial court to belong to the partnership, we may note at this point that defendant claims that the fees in three of these cases were made unusually large by stipulation to cover work done for the defendants therein, and for a corporation organized by the heirs to purchase the property at foreclosure sale and that the proportion thereof resulting from such other work does not belong to the partnership, even if the foreclosure fee was a partnership asset. It is sufficient in that regard to say that the fact that such fees were allowed to and paid by the administrator as a fee for such foreclosure is sufficient to sustain the finding of the trial court, if it did not compel its conclusion. It will be necessary to more fully state the additional evidence concerning the foreclosure cases, as the facts vary somewhat in each case. On May 28, 1912, the administrator mailed the defendant the notes and mortgage of D. W. Lawrence, with interest computed to May 28, 1912, amounting to $148,406.27, in accordance with its practice when foreclosures were contemplated. The search of the records was completed April 30, 1912, and the expense thereof was claimed and recovered in the foreclosure. The complaint was filed September 18, 1912, and numbered 94,486. The fee allowed eight thousand dollars. In case No. 94,487, filed the same day, the mortgage of Lawrence. was delivered to the defendant May 13, 1912. Interest was figured to that date. Total amount of principal and interest was $124,712.84. Certificate of search was completed April 25, 1912. Attorney fee recovered, $4,833. In the foreclosure against Carey the fee recovered was five hundred dollars. Suit was filed November 16, 1913. The certificate of search for which the cost was recovered was one covered by the general order of February 5, 1912. In the suit against Rankin (foreclosure No. 97,715) the complaint was filed January 11, 1913. The original order of search included this mortgage, but the certificate upon which the foreclosure was based was covered by a subsequent order. [1] While these complaints were all filed long after the death of McNutt, the relationship of

the parties, the delivery of the mortgages, the computation of interest, and the order of a foreclosure search as early as February, 1912, all point to the conclusion adopted by the trial court, and sufficiently sustain its finding that such business was partnership business, as was the three foreclosures begun before his death, all indicating the general plan of closing up the business of the estate by such foreclosures. There are other facts and circumstances which tend to support the conclusion of the trial court, but in view of our conclusion it is unnecessary to set them forth.

The appellant attacks a finding that a fee of $1,750, allowed in the settlement of the final account of the administrator for the settlement of the executors' final accounts, was a partnership asset. The statement of the defendant on which the fees were paid, that this work "extended over practically the whole time, from the resignation of the former executors until the settlement of their accounts and took most of my time," is alone sufficient to sustain the finding that it was partnership business.

[2] The partnership also acted as attorneys for the *Estate of Phillip Glassell,* one of the heirs of Andrew Glassell. The defendant claims that there is no evidence of any employment to complete the administration, and, therefore, that the fee for such work does not belong to the partnership. This estate had been in probate from April 22, 1907. The partnership had acted as attorneys for the executors and after the substitution of the Southern Trust Company in both estates acted for such administrator. After the death of McNutt a decree of partial distribution was procured, the final account was settled and final distribution had. These proceedings were necessarily contemplated at the time of the employment of the partnership, and the relationship of the parties was such as to justify the conclusion of the trial court that this was partnership business. To uphold the contention of the defendant would be to override the almost universal custom relating to such employment, a custom by which probate courts have for years fixed the fees of the attorneys for executors, and which is now recognized by the statute, which fixes the attorney fees to be allowed to executors and administrators.

[3] The appellant claims that the finding in favor of the plaintiff that a six hundred dollar fee received in the case

of *Provident Gold Min. Co.* v. *Haines* was partnership property is not supported by the evidence. The partnership was employed at an agreed fee of one thousand dollars. Appellant conducted an appeal after the death of his partner and, having collected six hundred dollars, claims the right to apply four hundred dollars only to the partnership fee and the balance to his service on appeal. Waiving the question as to whether such appeal was partnership business, the defendant was bound to apply the payment of six hundred dollars, made without designation, to the partnership fee then due and owing. Appellant claims that the trial court made no finding with reference to a claim that the decedent had received medical services valued at $572 from a client, who owed the partnership a fee exceeding that amount and had thus, in effect, collected that part of the fee. The client filed a claim against the estate of the decedent, which had not been disposed of. **[4]** The client could not properly set off this individual debt against the partnership claim, and if there was any error, it was in a failure in the accounting to dispose of the fee due the partnership, but this is not assigned by appellant as an error.

Appellant complains that the court only allowed him two-thirds of the fees earned by the partnership, and by him in his capacity as surviving partner. Assuming for the purposes of the decision that he was entitled to more than one-half of such fees (see *Little* v. *Caldwell*, 101 Cal. 553, [40 Am. St. Rep. 89, 36 Pac. 107]), we think the record is such that the conclusion of the trial court in the matter of apportionment of fees is sufficiently supported by evidence.

As to the points made concerning the admissibility of evidence, the foregoing sufficiently shows its pertinence.

Judgment affirmed.

Lennon, J., and Sloane, J., concurred.

Hearing in Bank denied.

All the Justices concurred.