[L. A. No. 19504. In Bank. Sept. 20, 1946.]

MANDIE J. JACOBSON, as Administratrix, etc., Respondent, v. ESER WIKHOLM, Appellant.

Harold D. Kraft for Appellant.

John E. McCall for Respondent.

SPENCE, J.—Alex Jacobson and Eser Wikholm, the defendant, were copartners in a general construction business from 1940 until the death of the former, February 13, 1944. Defendant, as the surviving partner, retained possession of the partnership assets and proceeded with the settlement of its affairs. (Prob. Code, § 571.) The partnership's only pending contract concerned a construction job for the federal government at Blythe, California, which job involved the erection of an army air base consisting of a squadron hangar,

a subdepot hangar, and an ammunition storage building. The work had been commenced on January 6, 1944, and it was completed after the passing of decedent. Plaintiff, as administratrix of the estate of the deceased partner, brought this action for an accounting incident to defendant's winding up the partnership affairs.

The dispute between the parties centered upon the distribution of the profits derived from the Blythe construction job. It is plaintiff's position that finishing the work was necessary in winding up the partnership affairs; that having assumed such responsibility, defendant was obligated to exert every effort to complete his task successfully; and that in the liberal profits so realized, defendant's participation to the extent of his one-half share would constitute ample compensation for services rendered in settlement of the partnership business. The trial court found that all moneys due the partnership had been collected by defendant, but that defendant refused to render plaintiff an adequate accounting or to pay her one-half of the net assets; that defendant did in fact wind up the affairs of the partnership; that all of the work done at Blythe in completing the government contract was necessary in winding up the partnership affairs; and that there remained in defendant's possession for distribution between himself and plaintiff the sum of $49,286.98. Prevailing in her claim to an equal share thereof, plaintiff was awarded judgment in the sum of $24,643.49 with interest at 7 per cent from October 31, 1944, the date of plaintiff's delivery to defendant of a balance sheet showing the result of an audit of the books. From said judgment defendant prosecutes this appeal.

Defendant contends: (1) That the judgment unjustly deprived him of compensation for his services in winding up the partnership affairs; (2) that material evidence bearing on his compensation claim was improperly rejected; and (3) that the court's interest assessment was erroneous. Both law and reason support defendant's points of objection and require reversal of the judgment.

Though partners, in the absence of special agreement, receive no compensation, yet "a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs." (Civ. Code, § 2412(f); 7 U.L.A. 28, Uniform Partnership Act, § 18(f).) Prior to 1929 when the

Uniform Partnership Act became part of our statutory law (Stats. 1929, ch. 864), the common-law rule—that such services by the survivor were not compensable—prevailed in this state. That rule rested upon the premise that the law enjoined such duty on the survivor as an incident of the contract of partnership, and the death of a copartner was one of the ordinary risks which a partner took. Within the meaning of the rule, the winding up or settling of the partnership affairs was restricted to selling the firm property, receiving money due the firm, paying its debts, returning the capital contributed by each partner, and dividing the profits. (40 Am.Jur., § 313, p. 348; *Maynard* v. *Richards*, 166 Ill. 466 [46 N.E. 1138, 57 Am.St.Rep. 145]; *Lamb* v. *Wilson*, 3 Neb. (unof.) 496 [92 N.W. 167].) Where, however, the surviving partner rendered service in excess of the mere winding up of the partnership affairs, he was entitled to compensation for such excess. The most usual application of this principle was made where the surviving partner successfully continued the business of the firm or successfully completed an enterprise in which the firm had been engaged, so that a substantial benefit was received from his efforts. Illustrating this distinction is the early case of *Griggs* v. *Clark*, 23 Cal. 427, where it was held proper to allow the survivor of a cattle raising partnership reasonable compensation for his time, skill, and industry in taking care of the stock for approximately a year following the death of the copartner, when its sale was measurably more profitable. Thus, the court said at pages 430-431: ". . . When the partnership has been carried on for some time after a dissolution by death, and such continuance has proved beneficial to the parties, it is but just and proper that the surviving partner should receive a reasonable allowance for his skill and industry in conducting the business, for during that time the business has not received the care and labor of the deceased partner, as an equivalent for such services. While all the parties are living, each is under obligation to devote his time and services to the partnership business, and there is therefore good reason for holding that neither should receive a compensation for such services. But when, in consequence of the death of one partner, this equality no longer exists, it is but equitable that the surviving partner should be compensated for such services as he may have rendered in the business after the death of the deceased partner, to be deducted out of the profits realized

by the continuance of the business; and the overplus of such profits, after deducting such compensation, to be divided between the partners. (Story on Part. sec. 343 and notes; Coll. on Part. sec. 328; Gow. Part. 354.) We do not wish to be understood, however, as holding that the surviving partner is entitled to compensation merely for services rendered in winding up the affairs of the firm (*Beatty* v. *Wray*, 19 Pa. 516 [57 Am.Dec. 677]), but to confine it to a case like the present, where the partnership business has been continued for a considerable period of time in order that the affairs of the partnership may be advantageously wound up.''

In the case of an active partnership, there is ordinarily business to be conducted after the death of a partner in order fairly to discharge the partnership obligations. Thus, it is well settled that a surviving partner must complete all executory contracts of a firm which remain in force after the death of a partner. (*Little* v. *Caldwell*, 101 Cal. 553, 560 [36 P. 107, 40 Am.St.Rep. 89].) Although the fulfilling of contractual obligations of the partnership may be a different matter from that of merely liquidating the assets preparatory to a distribution, in the performance of these obligations the surviving partner is in fact "winding up the partnership affairs," for which services he "is entitled to reasonable compensation" under the prevailing law. (Civ. Code, § 2412(f).) While fulfilling contractual obligations is in a certain sense continuing the partnership business to that limited extent so that it "may be advantageously wound up," such services no longer need be so distinguished from the mere "winding up" process to avoid the harshness of the denial of compensation under the common-law rule. (*Griggs* v. *Clark, supra.*) It is the fact that the surviving partner has expended time, labor, and skill in the administration of the partnership assets incident to the successful termination of the unfinished business that now governs his right to remuneration therefor. Though the relationship of a surviving partner to the administrator of his deceased partner is fiduciary (*Josephberg* v. *Cavallero*, 262 App.Div. 1 [27 N.Y.S.2d 361]), and as such trustee he must exercise his talents and industry honestly and in the highest good faith (*Grigg* v. *Hanna*, 283 Mich. 443 [278 N.W. 125]), that is no reason for refusing compensation to a survivor where he diligently and efficiently winds up the partnership affairs.

Effective example of this principle is found in the case of *Murdock* v. *Murdock*, 300 Pa. 280 [150 A. 599], where the question of compensation arose under the same provision of the Uniform Partnership Act here involved (Civ. Code, § 2412(f)) with respect to a surviving partner's services in completing certain brokerage transactions. It was there said at page 603 [150 A.]: "Nor can we see error in allowing compensation to the liquidator (the surviving partner) from November 1, 1918, to the time of the sale of the property . . . 'a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs.' . . . We find no evidence of any bad faith on the part of the defendant, who was compelled, on his brother's death, to adjust a most difficult situation requiring much time and labor. . . ."

There now arises the question of what compensation is proper for the surviving partner in relation to the proportions in which he and the representative of the deceased partner shall share in the profits realized from completing the unfinished business of the partnership as part of the entire process of "winding up" its affairs. This precise point was considered in the case of *Whittaker* v. *Jordan*, 104 Me. 516 [72 A. 682], under peculiarly pertinent factual considerations. There the surviving partner of a building business completed "certain jobs of repairing and alteration known as the 'Gurnee job' and the 'Doe job.'" On the former job "about one-third of the work had been completed" before the passing of the deceased partner, while on the latter job "the work had not been actually commenced at the time of the death of" the copartner, though "the services of the firm had been engaged" theretofore. "The entire plant and establishment of the firm and all materials on hand suitable and necessary for the purpose were used by [the surviving partner] to complete the work." Profits resulted and in determining their division, the court said at page 684 [72 A.]: "When his [the survivor's] good faith and fairness are not impeached, the most that the representatives of the deceased partner can justly demand is that he should account to them for their capital, and, in addition, for whatever it has earned. This involves the necessity of inquiring how much of the profits is attributable to the services and skill of the surviving partner, and how much to the capital invested in the business. The latter portion of the profits shows what the capital has earned,

and should rightfully be divided among the owners of the capital in proportion to their shares of the capital.''

Cases concerning the completion of the partnership enterprise in the course of the continuance, rather than the ''winding up,'' of the firm's business present analogous considerations of equity with respect to an accounting to the partnership estate for subsequent profits. So pertinent is the case of *Painter* v. *Painter*, 4 Cal. Unrep. 636 [36 P. 865], where the surviving partners of a printing concern were left with a half-expired 10-year contract to print the San Francisco Directory. They formed a new copartnership, continued with the business of publishing the directory, used the old firm's equipment in doing the work and made profits from the enterprise. After noting at page 639 that ''the continuance of the business by the new firm facilitated, to some extent, the winding up of the old business,'' the court continued at page 647 : ''It is true that, as a general rule, an accounting of profits will be ordered against a surviving partner who conducts the business after dissolution, with the use of the firm assets. 'But if, from the nature of the concern, and the state of the accounts, the assets cannot be realized, except by continuing business, and the surviving partners continue as a new firm, debiting themselves with old assets, they are not accountable for profits.' . . . Just allowances to the continuing partners are always made. . . . Hence, if the subsequent profits are partly or wholly due to skill of the remaining partners, a special inquiry is necessary to ascertain the amount. No general rule can be made. . . .'' Upon the same reasoning in the case of a law partnership, the surviving partner was allowed an extra portion of the fees contracted by the firm for the work he performed after his partner's decease. (*McNutt* v. *Hannon,* 183 Cal. 537, 542 [191 P. 1108].) The same equitable doctrine has been supported by the courts of other states where the question of accounting has arisen with respect to subsequent profits realized in completing the partnership enterprise. (*Cahill* v. *Haff*, 248 N.Y. 377 [162 N.E. 288, 292] ; *Bracht* v. *Connell*, 313 Pa. 397 [170 A. 297, 300].)

In the light of these principles it becomes apparent that the particular factual situation involved is a governing factor in resolving the controversial issue of accounting between the parties here. ■■■ The present record shows the following undisputed facts: That the work on the Blythe air base

commenced on January 6, 1944; that approximately 20 per cent of the total job was completed by February 13, 1944, the date of the death of defendant's copartner; that on said last mentioned date the contract for the squadron hangar was cancelled and the outlay schedule covering that portion of the work was thereafter analyzed and detailed by defendant for the purpose of figuring what was owed by the government with respect to said cancellation item; that in the course of completing the balance of the partnership enterprise, comprising a period of some three months, defendant made several trips to the scene of operations, was daily consulted by the general superintendent stationed continuously on the job, and negotiated with the government various modifications affecting construction details of the work; and that plaintiff, with knowledge of defendant's continuance of the Blythe work, made no objection to his so proceeding in order to bring it to a successful conclusion. In addition, defendant sold assets of the partnership, paid bills, and collected and disbursed moneys due and owing. These services were all of value to the partnership in winding up its affairs, and the burden was on defendant to establish his compensation claim as authorized by law. (Civ. Code, § 2412(f).) To this end, it appears that defendant made 15 offers of proof, which the trial court rejected as irrelevant and self-serving. Without undertaking to detail each of these excluded items, suffice it to say that they in general referred to these propositions: Partnership records showing estimates of costs and profits in comparison with actual outlays and return on the Blythe job; account books disclosing defendant's bookkeeping duties in connection with the work; modifications made in the original contract by defendant upon negotiation with the government after his partner's death and which resulted in additional profits; the break-down of the squadron hangar contract and the computations made in consequence of its cancellation; and the oral agreement of the partners as to salary arrangements on government jobs depending on the amount of work each performed. These matters were all material in establishing defendant's right to "reasonable compensation" based upon the time, labor, and skill expended in "winding up the partnership affairs."

 But, contrary to defendant's theory, there is no factual basis for requiring plaintiff, as legal representative of the deceased partner, to elect to receive, in measure of her

accounting right on the Blythe job as completed by defendant, "the value of his [the deceased partner's] interest in the dissolved partnership with interest" or "in lieu of interest, the profits attributable to [its] use. . . ." (Civ. Code, § 2436.) Said section expressly applies only when the business is continued *"without liquidation."* (Civ. Code, § 2435, subd. (3).) That is not the situation here where defendant, as the surviving partner, has simply fulfilled an obligation of the partnership incident to *"winding up the partnership affairs"* but has not continued the business beyond that limited extent. Defendant's right to "reasonable compensation" for his services therefore stems wholly from section 2412(f) of the Civil Code. ■ However, in view of the propriety of defendant's claim and plaintiff's denial thereof in her accounting demand of October 31, 1944, for one-half of the net assets in defendant's possession after completion of the Blythe job, there is no foundation for an assessment of interest as of that date against defendant for failing to make such distribution. When the parties went to trial on the accounting issue, the only moneys shown to have been retained by defendant were the profits realized from the Blythe job plus a small reserve from the capital of the partnership earned before the passing of the deceased partner, for the payment of pending bills. While defendant occupies the position of a trustee in his retention of such money (*Ruppe* v. *Utter,* 76 Cal.App. 19, 25 [243 P. 715]), the requirement that he account therefor must await the determination of the parties' respective claims upon an equitable basis as established by evidence germane to the disputed issue.

The judgment is reversed and the cause is remanded for retrial in accordance with the views hereinabove expressed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.