**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN THE MATTER OF HELLER
EHRMAN LLP,

*Debtor*,

HELLER EHRMAN LLP,
Liquidating Debtor,
    *Plaintiff-Appellant*,

v.

DAVIS WRIGHT TREMAINE
LLP,
    *Defendant-Appellee.*

No. 14-16314

D.C. No.
3:14-cv-01236-CRB

IN THE MATTER OF HELLER
EHRMAN LLP,
                    *Debtor*,

_____

HELLER EHRMAN LLP,
Liquidating Debtor,
          *Plaintiff-Appellant*,

          v.

JONES DAY,
          *Defendant-Appellee.*

No. 14-16315

D.C. No.
3:14-cv-01237-CRB


IN THE MATTER OF HELLER
EHRMAN LLP,
                    *Debtor*,

_____

HELLER EHRMAN LLP,
Liquidating Debtor,
          *Plaintiff-Appellant*,

          v.

FOLEY & LARDNER LLP,
          *Defendant-Appellee.*

No. 14-16317

D.C. No.
3:14-cv-01238-CRB

IN THE MATTER OF HELLER
EHRMAN LLP,
*Debtor*,

HELLER EHRMAN LLP,
Liquidating Debtor,
*Plaintiff-Appellant*,

v.

ORRICK HERRINGTON &
SUTCLIFFE LLP,
*Defendant-Appellee.*

No. 14-16318

D.C. No.
3:14-cv-01239-CRB

ORDER CERTIFYING
QUESTION TO THE
CALIFORNIA
SUPREME COURT

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, Senior District Judge, Presiding

Argued and Submitted June 13, 2016
San Francisco, California

Filed July 27, 2016

Before: Richard R. Clifton, and Sandra S. Ikuta, Circuit
Judges, and Royce C. Lamberth,[*] District Judge.

Order

---

[*] The Honorable Royce C. Lamberth, United States District Judge for
the District of Columbia, sitting by designation.

## SUMMARY[**]

### Bankruptcy

The panel certified the following question to the California Supreme Court:

> Under California law, does a dissolved law firm have a property interest in legal matters that are in progress but not completed at the time the law firm is dissolved, when the dissolved law firm had been retained to handle the matters on an hourly basis?

### ORDER

We ask the California Supreme Court to resolve a question of state law: whether a dissolved law firm has a property interest in legal matters that are in progress but not completed at the time the law firm is dissolved, where the dissolved law firm had been retained to handle the matters on an hourly basis. This question resolves the bankruptcy appeal before us because if a dissolved law firm does not have a property interest in such matters, the transfer of those matters to a new law firm does not constitute a fraudulent transfer under the Bankruptcy Code. Although California courts of appeal have applied pre-1996 partnership law to address this issue, we have found no published California state court opinion addressing it after the California legislature revised

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the applicable state partnership law in 1996. Accordingly, pursuant to Rule 8.548 of the California Rules of Court, we certify the following question to the California Supreme Court:

> Under California law, does a dissolved law firm have a property interest in legal matters that are in progress but not completed at the time the law firm is dissolved, when the dissolved law firm had been retained to handle the matters on an hourly basis?

Our phrasing of this question should not restrict the Court's consideration of the issues involved. The Court may rephrase the question as it sees fit in order to address the contentions of the parties. If the Court agrees to decide this question, we agree to accept its decision. We recognize that the Court has a substantial caseload, and we submit this question only because of its significance to the bankruptcy administration of dissolved law firms in the state of California.

## I

We start by providing a brief history of the development of the California doctrine of dissolved law firms' rights to pending legal matters, and then provide the facts of the particular appeal before us.

## A

While it has long been established that partners have fiduciary duties towards each other, *see Gorman v. Russell*, 14 Cal. 531, 539 (1860), the California Supreme Court has addressed the fiduciary duties of former partners of a

dissolved law firm with respect to the unfinished business pending at the time of dissolution in only two cases, both from the 1800s. The first case involved an agreement between former partners to share contingency fees and the second involved a surviving partner. In *Osment v. McElrath*, 68 Cal. 466 (1886), a two-partner law firm dissolved with several cases pending. The former partners agreed to share any contingency fees from the pending matters, but the lawyer who completed the legal work on the matters later refused to do so. *Id*. at 467, 470. The California Supreme Court affirmed the trial court's apportionment of the fees between the partners. *Id*. at 472. Rejecting the argument that the working lawyer was entitled to a greater share of the fees, the Court pointed to the common law rule that partners are not entitled to compensation for services rendered to the partnership, even after dissolution. *Id.* at 471. However, the Court left open the question whether a different rule might apply to winding up partnerships between lawyers "where the profits of the firm are the result solely of professional skill and labor." *Id*. Eight years later, the California Supreme Court held in *Little v. Caldwell*, 101 Cal. 553 (1894), that after one law firm partner dies leaving a contingency fee contract not fully performed, the surviving partner has a duty to "complete the unfinished contract for the benefit of the partnership," and the contract "is still to be viewed by a court of equity as an asset of the partnership." *Id*. at 560–61.

The common law partnership rules enunciated in *Osment* and *Little* were superseded in 1929, when the California legislature adopted the Uniform Partnership Act (UPA), *see Jacobson v. Wikholm*, 29 Cal. 2d 24, 27–28 (1946), which it later codified as part of the state's Corporations Code, *see*

Cal. Corp. Code § 15001 et. seq. (1998).[1] Under UPA, partners had a fiduciary duty to each other to "account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners . . . ." Cal. Corp. Code § 15021(1) (1998). Partners retained this duty even after the dissolution of the partnership, with only one exception: UPA provided that "[n]o partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his or her services in winding up the partnership affairs." *Id.* § 15018(f). The California Supreme Court interpreted this language to mean that, after the death of a partner, the surviving partner was entitled to reasonable compensation "based upon the time, labor, and skill expended" in winding up pending matters. *Jacobson*, 29 Cal. 2d at 32.

The California Court of Appeal relied on § 15018(f) in holding that each former partner had a duty to the rest of their former partners to share in attorneys' fees from a dissolved law firm's unfinished business. In *Jewel v. Boxer*, a four-partner law firm dissolved, and the former partners

---

[1] The National Conference of Commissioners on Uniform State Laws (the Uniform Law Commission, or ULC) publishes model codes, such as UPA, which are frequently adopted by state legislatures. The California legislature adopted the majority of UPA in 1929, effective August 14, 1929. The ULC subsequently published a revision to UPA, the Uniform Partnership Act of 1994 (termed the Revised Uniform Partnership Act, or RUPA), which the California legislature also adopted in 1996, and which governed all partnerships as of January 1, 1999. *See* Cal. Corp. Code § 16111. The ULC's official comments to the model codes are considered by California courts for guidance. *See, e.g.*, *Rappaport v. Gelfand*, 197 Cal. App. 4th 1213, 1227 (2011); *Rosenfeld, Meyer & Susman v. Cohen*, 191 Cal. App. 3d 1035, 1059 (1987).

subsequently formed two new firms. 156 Cal. App. 3d 171, 175 (1984). *Jewel* reasoned that under § 15018(f), the former partners were not surviving partners, and therefore were not entitled "to extra compensation for services rendered in completing unfinished business." *Id.* at 176. As a result, any attorneys' fees generated from matters that had been pending when the law firm dissolved were "to be shared by the former partners according to their right to fees in the former partnership, regardless of which former partner provides legal services in the case after the dissolution." *Id.* at 174. The former partners would be entitled only "to reimbursement for reasonable overhead expenses," and not for their work on a quantum meruit basis. *Id.* at 180. The court rejected the argument that such a conclusion is contrary to the rule that "clients have an absolute right to the attorney of their choice," because the client's right is "irrelevant to the rights and duties between the former partners with regard to income from unfinished partnership business." *Id.* at 177–78.

Subsequent court of appeal decisions consistently applied *Jewel*'s interpretation of § 15018(f) to contingency fee matter cases. *See, e.g.*, *Fox v. Abrams*, 163 Cal. App. 3d 610, 612–13 (1985) (applying rule that former partners had a right to share in attorneys' fees from a dissolved law firm's unfinished contingency fee cases); *Rosenfeld*, 191 Cal. App. 3d at 1063 (same). In 1993, a California court for the first time expressly applied *Jewel*'s interpretation of § 15018(f) to matters that the dissolved law firm had been handling on an hourly basis. *See Rothman v. Dolin*, 20 Cal. App. 4th 755, 757–59 (1993). *Rothman* reasoned that "the policy reasons for the rule announced in *Jewel*, that is, that fees received in connection with the unfinished business of a partnership are to be allocated according to the former partners' respective interests in the partnership rather than on a quantum meruit

basis, apply with equal force to both contingency and hourly rate cases." *Id.* at 758. No other published case in California has expressly addressed this issue.

Although the California Supreme Court has not directly addressed the question of dissolved law firms' interest in legal matters pending at the time of dissolution, the Court acknowledged *Jewel*'s interpretation of § 15018(f) in one case, *Howard v. Babcock*, 6 Cal. 4th 409, 424 n.8 (1993). In *Howard*, the Court held that an "an agreement among law partners imposing a reasonable toll on departing partners who compete with the firm" was enforceable. *Id.* at 412. The defendants argued that such an agreement would violate rule 1-500 of the Rules of Professional Conduct because it discouraged withdrawing partners from continuing to represent clients who wished to employ them. In rejecting this contention, *Howard* noted that "in some respects, the 'no-compensation rule' of partnership law, whereby departing partners are compensated for winding up the unfinished business of the partnership according to their partnership interest, may be just as much a disincentive on the withdrawing partner to continue to represent clients of the firm as an anticompetitive penalty, and yet this is not considered to be a violation of rule 1-500." *Id*. at 424 n.8 (citing *Jewel*, 156 Cal. App. 3d 171, among other cases). *Howard* did not otherwise address the *Jewel* issue.

In 1996, the California legislature revised its partnership law by replacing UPA with RUPA. *See* Cal. Corp. Code § 16100 et. seq.; *see also* 9 Witkin, Summary Partnership § 15, 590 (10th ed. 2005). Among its other modifications, RUPA clarified the fiduciary duties of partners after the dissolution of the partnership. It replaced former section § 15021(1), which had provided that partners had a fiduciary

duty to account for benefits and profits to the other partners, with § 16404(b)(1), which sets forth a partner's fiduciary duty "[t]o account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity."  Cal. Corp. Code § 16404(b)(1).  But at the same time, RUPA changed the rule regarding partners' post-dissolution rights to reasonable compensation; it replaced § 15018(f), which had provided that only a "surviving partner is entitled to reasonable compensation for his or her services in winding up the partnership affairs," with § 16401(h), which provides that all partners are entitled to "reasonable compensation for services rendered in winding up the business of the partnership."  Cal. Corp. Code § 16401(h).[2] According to the official comment to RUPA § 401(h) (which is identical to § 16401(h) of the California Corporations Code), this revision was intended to provide that "any partner winding up the business is entitled to compensation, not just a surviving partner winding up after the death of another partner."  RUPA § 401 cmt. 9.

California's adoption of RUPA is material to the question raised in this case.  *Jewel* had primarily based its conclusion that lawyers had to account to their former partners for all income generated from a dissolved law firm's unfinished business on the language in § 15018(f) that precluded former partners from earning extra compensation for winding up

---

[2] Section 16401(h) provides in full: "A partner is not entitled to remuneration for services performed for the partnership, except for reasonable compensation for services rendered in winding up the business of the partnership."

partnership business. *Jewel*, 156 Cal. App. 3d at 176. But under RUPA, partners are entitled to "reasonable compensation" for such work. Cal. Corp. Code § 16401(h). Because "reasonable compensation" means fees "attributable to the services and skill" of the partner performing the work, *Jacobson*, 29 Cal. 2d at 30, the language in § 16401(h) suggests that former partners now have a claim to some or all of their hourly rate for working on unfinished business.

Despite the significance of this legislative change, no California court has considered (in a published opinion[3]) whether there remains a basis for holding that a partnership has a property interest in legal matters pending at the time the firm is dissolved, when the firm was retained on an hourly basis, now that the California legislature has repealed § 15108(f) and replaced it with § 16401(h).

### B

We now explain *Jewel*'s continuing impact on bankruptcy law. In 2009, a bankruptcy court determined that the rule enunciated in *Jewel*, that former partners of a dissolved law firm had a right to share in attorneys' fees received on cases that had been pending when the law firm dissolved, had significance in a bankruptcy context. *See In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318 (N.D. Cal. 2009).

---

[3] Appellant points out that two unpublished California opinions have applied *Jewel* after the enactment of RUPA. *See Marquart v. Smith*, 2014 WL 1990286 (Cal. Ct. App. May 16, 2014); *Kuist v. Hodge*, 2008 WL 510075 (Cal. Ct. App. Feb. 27, 2008). Under the Supreme Court's rules, these unpublished cases may not be cited or relied on by a court or a party. *See* California Rules of Court 8.1115.

The reasoning in *Brobeck* relies on underlying principles of bankruptcy law. Under 11 U.S.C. § 548, a bankruptcy trustee has the power to set aside the debtor's transfer of "an interest of the debtor in property" to a third party when the transfer was made within a specified period before the date of filing a petition in bankruptcy, and the transfer was made either with intent to "hinder, delay or defraud" creditors, *id*. § 548(a)(1)(A), or was constructively fraudulent because it met certain criteria, *id*. § 548(a)(1)(B). For purposes of § 548, the debtor has an interest in any property "that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. IRS*, 496 U.S. 53, 58 (1990); *see also* 11 U.S.C. § 541(a)(1) (defining the debtor's property interests as including "all legal or equitable interests of the debtor in property as of the commencement of the case"). Since "[p]roperty interests are created and defined by state law," *Butner v. United States*, 440 U.S. 48, 55 (1979), we "look to state law to determine property interests" of the debtor, *In re Perl*, 811 F.3d 1120, 1127 (9th Cir. 2016).

*Brobeck* involved a national law firm partnership that experienced serious financial difficulties. 408 B.R. at 326. The partners entered into a dissolution agreement stating that neither the partners nor the partnership would have any claim to legal matters that were ongoing at the time of the dissolution of the partnership. *Id*. at 327. Specifically, the provision stated it was "intended to expressly waive, opt out of and be in lieu of any right any Partner or the Partnership may have to 'unfinished business' of the Partnership, as that term is defined in *Jewel v. Boxer*, or as otherwise might be provided in the absence of this provision through interpretation or application of the California Revised Uniform Partnership Act." *Id.* After the law firm's

dissolution, its partners moved to other firms, taking pending legal matters along with them.  *Id.* at 328.  The law firm was subsequently put into involuntary bankruptcy, and the trustee in bankruptcy commenced two adversary proceedings seeking a declaration that the profits from the legal matters that were pending when the law firm dissolved were property of the dissolved law firm.  *Id.* at 330.

The bankruptcy court agreed.  It first held that under *Jewel*, the dissolved law firm had a property interest in the profits from the legal matters that were pending at the time of the dissolution, whether those cases were billed on an hourly or contingent fee basis.  *Id.* at 338–39.  It did not address the question whether RUPA affected the applicability of *Jewel* to such profits.  *Id.* at 337–38.  It then held that the law firm waived its interests in these profits when its partners entered into the dissolution agreement.  *Id.* at 338.  This waiver "gave what was otherwise property of [the law firm] to the [former law firm] partners."  *Id*.  The bankruptcy court then concluded that the trustee had established that the law firm had transferred the profits in the pending legal matters to the former partners, and this transfer could be challenged as a fraudulent transfer under § 548(a).  *Id.* at 339–40.

After *Brobeck* was decided, the Second Circuit addressed a similar issue arising under New York law.  *See In re Thelen LLP*, 736 F.3d 213 (2d Cir. 2013).  *Thelen* considered "whether, for purposes of administering the firm's related bankruptcy, New York law treats a dissolved law firm's pending hourly fee matters as its property."  *Id*. at 216.  The court certified the question to the New York Court of Appeals.  *Id.* at 225.

The New York Court of Appeals held that a dissolved law firm does not have a property interest in income generated from unfinished hourly legal matters. *In re Thelen LLP*, 24 N.Y.3d 16, 28 (2014). The court rejected the concept that a law firm has a property right in unfinished law firm business. *Id.* Although acknowledging that courts in other jurisdictions had interpreted UPA (which was also the basis for New York's Partnership Law) to the contrary, *Thelen* stated that the Partnership Law "does not define property; rather, it supplies default rules for how a partnership upon dissolution *divides* property as elsewhere defined in state law." *Id.* Accordingly, the law "has nothing to say about whether a law firm's 'client matters' are partnership property." *Id.* Further, because "clients have always enjoyed the 'unqualified right to terminate the attorney-client relationship at any time' without any obligation other than to compensate the attorney for 'the fair and reasonable value of the *completed services*,'" *id.* (citing *Matter of Cooperman*, 83 N.Y.2d 465, 473 (1994)), the "expectation of any continued or future business is too contingent in nature and speculative to create a present or future property interest," *id.* (quoting *Verizon New England Inc. v. Transcom Enhanced Servs., Inc.*, 21 N.Y.3d 66, 72 (2013)). Accordingly, *Thelen* held that "no law firm has a property interest in future hourly legal fees because they are 'too contingent in nature and speculative to create a present or future property interest.'" *Id.* (quoting *Verizon New England Inc.*, 21 N.Y.3d at 72).

## II

This is an appropriate case in which to seek the California Supreme Court's guidance because, as in *Brobeck* and *Thelen*, it raises the question whether hourly fee matters pending at the time of the law firm's dissolution are property

of the dissolved law firm in the context of an adversary action in bankruptcy.

Heller was a global law firm with more than 700 attorneys. The partnership was comprised of professional corporations, each of which employed attorneys as shareholders. The shareholders controlled Heller through shareholder votes and management committees. By August 31, 2008, Heller experienced financial distress. Its balance sheet reflected around $5 million in cash and nearly $55 million in bank debt. On September 19, 2008, Bank of America, acting as an agent for itself and Citibank, declared Heller in default. Soon after, Heller's shareholders voted to approve a dissolution plan.

The dissolution plan included a waiver by the law firm of any rights and claims "under the doctrine of *Jewel v. Boxer*, 156 Cal. App. 3d 171 (1984) to seek payment of legal fees generated after the departure date of any lawyer or group of lawyers with respect to non-contingency/non-success fee matters only." The waiver provision stated that it was "an inducement to encourage Shareholders to move their clients to other law firms and to move Associates and Staff with them, the effect of which will be to reduce expenses to the Firm-in-Dissolution."

In the following months, Heller's former shareholders joined at least sixteen other law firms, and many of Heller's former clients signed new fee agreements with those law firms to continue to receive representation.

In December 2008, Heller filed a petition under Chapter 11 of the Bankruptcy Code. In August 2010, Heller's joint plan of liquidation was approved, and the plan became

effective in September 2010. A plan administrator was appointed and became responsible for pursuing claims to recover assets for the benefit of Heller's creditors.

In December 2010, the plan administrator filed adversary proceedings in bankruptcy court on behalf of Heller against the sixteen law firms, seeking to avoid the dissolution agreement's waiver of Heller's rights to post-dissolution legal fees as a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B) or under California Civil Code § 3439.05 (which has essentially the same elements as § 548(a)(1)(B)). Basing its action on *Brobeck* (which had been decided by the same bankruptcy judge hearing Heller's case), Heller alleged that it had a property right in legal fees generated by work on hourly matters after its dissolution, that the waiver of this right in the dissolution agreement constituted a transfer of Heller's interest in property (presumably to the shareholders), and that the new law firms were the subsequent transferees of such transfers. Heller further alleged that such transfers met the additional statutory criteria in § 548(a)(1)(B) to be avoidable as fraudulent transfers.

After the bankruptcy court denied the new law firms' motions to dismiss, all but four of the sixteen firms settled with Heller. In June 2012, Heller and the four non-settling law firms (Davis Wright Tremaine LLP; Jones Day; Orrick, Herrington & Sutcliffe LLP; and Foley & Lardner LLP) filed cross motions for summary judgment on whether the waiver in the dissolution agreement constituted a transfer of Heller's property to the defendants and whether any such transfer was a fraudulent transfer under 11 U.S.C. § 548. Relying on its earlier decision in *Brobeck*, the bankruptcy court granted Heller's motion.

After further proceedings in bankruptcy court, the bankruptcy court certified to the district court that the case could proceed to bench and jury trials for factual determination of the amount of damages in the four cases. The district court entered an order withdrawing the reference from the bankruptcy court, but instead of proceeding to trial, the court asked for briefing on the waiver issue. Reviewing the bankruptcy court's rulings de novo, the district court granted summary judgment in favor of the four defendants. Among other things, the district court reasoned that RUPA undermined the legal foundation on which *Jewel* rests because RUPA contains no provision giving dissolved law firms the right to demand an accounting for profits earned by its former partners under a new retainer agreement, but allows partners to obtain "reasonable compensation" for helping to wind up partnership businesses. Because *Jewel* did not apply, the court held that Heller did not have a property interest in its pending hourly matters at dissolution. Therefore, it did not reach the issue whether the *Jewel* waiver constituted a fraudulent transfer.

On appeal, Heller argues that RUPA did not abrogate the rule in *Jewel*, and under California law, a dissolved law firm has a property interest in the profits from the firm's unfinished business. Heller notes that two unpublished California cases[4] and two legal commentaries[5] have reached

---

[4] *See supra* note 3.

[5] The legal commentaries cited by Heller indicate that RUPA did not alter the fiduciary duties of partners. *See* 9 Witkin, Summary Partnership § 30, 604 (10th ed. 2005) ("Although [RUPA] treats the topic of fiduciary duties extensively, the Partnerships Committee of the State Bar, in reviewing California cases dealing with the fiduciary duties of partners, concluded that none would have been decided differently under

the same conclusion. According to Heller, § 16401(h) does not undermine *Jewel* because it merely allows former partners to receive some compensation for completing the dissolved law firm's unfinished business. To the extent that completion of the work generated profits beyond such "reasonable compensation," the former partners would continue to have a fiduciary duty to account for such profits to the former partnership. Accordingly, Heller argues, the former partners continue to have a fiduciary duty to account for the legal fees generated from the hourly matters that were pending when Heller dissolved, and Heller continues to have a property interest in such fees.

In response, the four defendant law firms argue, among other things, that partners completing the firm's unfinished hourly fee matters are entitled under § 16401(h) to their hourly rate for such work, so Heller has no ongoing property interest in the matters that have been transferred to other firms. As a policy matter, they argue that giving dissolved law firms a property interest in hourly fee matters that have been transferred to third party law firms would discourage such firms from representing clients of a dissolved firm because they would have no ability to profit from that representation.

### III

We are bound by decisions of the state's highest court in analyzing questions of that state's law, *Glendale Assocs., Ltd.*

---

[RUPA]."); *see also* Donald J. Weidner, *Cadwalader, RUPA and Fiduciary Duty*, 54 Wash. & Lee L. Rev. 877, 913 (1997) (discussing fiduciary duties under RUPA and noting that no change in current law was intended).

*v. N.L.R.B.*, 347 F.3d 1145, 1154 (9th Cir. 2003), but the California Supreme Court has not addressed the question (either before or after RUPA was enacted) whether a dissolved law firm has a property interest in unfinished business where the law firm had been retained on an hourly basis. Indeed, the Court expressly held this issue open some 130 years ago, and has not revisited it since. *See Osment*, 68 Cal. at 470. "When the state's highest court has not squarely addressed an issue," we predict "how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treaties and restatements for guidance." *Glendale Assocs.*, 347 F.3d at 1154 (quoting *N.L.R.B. v. Calkins*, 187 F.3d 1080, 1089 (9th Cir. 1999)). But the California Legislature's replacement of § 15018(f) with 16401(h) has substantially affected the basis for the court's conclusion in *Jewel*, and none of the California Courts of Appeal have applied *Jewel* in a published opinion after the enactment of RUPA.

For the reasons stated above, we need guidance from the California Supreme Court to determine whether Heller has a property interest in its unfinished hourly fee matters upon dissolution. The Court's decision determines the outcome of this appeal. If Heller has no such property interest then Heller cannot claim that the dissolution agreement constituted a transfer of the property interest. If Heller did have a property interest in its unfinished hourly fee matters, then we will remand to the district court to determine the remaining issues, namely whether the transfer met the criteria in § 548(a)(1) to constitute a fraudulent transfer that is avoidable by the plan administrator.

This issue is significant for California lawyers and law firms, as well as for their clients. Partners in California law firms need clarity regarding their obligations after a law firm dissolves. Absent guidance from the California Supreme Court, law firms will have difficulty predicting their entitlement to revenue from completing the unfinished business of dissolving law firms. Clients may also be disadvantaged by this ambiguity, as it may be unclear how their matters will be handled at a new law firm, if the hourly fees from their matters must be shared with a dissolved law firm. Moreover, lawyers in dissolving law firms may have difficulty providing accurate guidance to clients regarding the effect of a law firm dissolution on their matters. This may make compliance with Rule 3-700(A)(2) of the California Rules of Professional Conduct more difficult. *See* Cal. R. Prof. Conduct 3-700(A)(2) (requiring a withdrawing attorney, including an attorney withdrawing as a result of the dissolution of the attorney's law firm, to take "reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, complying with rule 3-700(D) [by returning the client's papers and property], and complying with applicable laws and rules."). The importance of this issue is underscored by the numerous amicus briefs this court received from bar associations and law firms in California.

We therefore respectfully ask that the California Supreme Court decide the certified question.

## IV

The Clerk of Court is hereby directed to transmit forthwith to the California Supreme Court, under official seal

of the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record pursuant to California Rule of Court 8.548.  Submission of this case is withdrawn, and the case will be resubmitted following receipt of the California Supreme Court's opinion on the certified question or notification that it declines to answer the certified question.   The panel shall retain jurisdiction over further proceedings in this court.   The parties shall notify the Clerk of this court within one week after the California Supreme Court accepts or rejects certification.   In the event the California Supreme Court grants certification, the parties shall notify the Clerk within one week after the court renders its opinion.

The captions of these cases are:

14-16314

IN THE MATTER OF HELLER EHRMAN LLP,
Debtor

---------------------------------------------------------

HELLER EHRMAN LLP, Liquidating Debtor,
Plaintiff-Appellant

v.

DAVIS WRIGHT TREMAINE LLP
Defendant-Appellee

and

14-16315

IN THE MATTER OF HELLER EHRMAN LLP,
Debtor

--------------------------------------------------------

HELLER EHRMAN LLP, Liquidating Debtor,
Plaintiff-Appellant

v.

JONES DAY,
Defendant-Appellee

and

14-16317

IN THE MATTER OF HELLER EHRMAN LLP,
Debtor

--------------------------------------------------------

HELLER EHRMAN LLP, Liquidating Debtor
Plaintiff-Appellant

v.

FOLEY & LARDNER LLP,
Defendant-Appellee

and

14-16318

IN THE MATTER OF HELLER EHRMAN LLP,
Debtor

--------------------------------------------------------

HELLER EHRMAN LLP, Liquidating Debtor
Plaintiff-Appellant

v.

ORRICK HERRINGTON & SUTCLIFFE LLP,
Defendant-Appellee

Counsel for the parties are as follows:

For Plaintiff-Appellant Heller Erhman LLP:

Christopher D. Sullivan
Diamond McCarthy LLP
150 California Street, Suite 2200
San Francisco, California 94111
Telephone (415) 692-5200

Jeffrey T. Makoff
Valle Makoff LLP
Two Embarcadero Center, Suite 2370
San Francisco, California 94111
Telephone (415) 986-8001

Kevin W. Coleman
Schnader Harrison Segal & Lewis LLP
650 California Street, 19th Floor
San Francisco, California 94108
Telephone (415) 364-6700

For Defendant-Appellee Davis Wright Tremaine LLP:

Steven A. Hirsch
Keker & Van Nest LLP
633 Battery Street
San Francisco, California 94111-1809
Telephone (415) 391-5400

For Defendants-Appellees Davis Wright Tremaine LLP and
Foley & Lardner LLP:

Peter P. Meringolo
Luther Orton
PMRK Law, LLP
One Sansome Street, Suite 3500
San Francisco, California 94104
Telephone (415) 964-4445

For Defendant-Appellee Jones Day:

Shay Dvoretzky
Jones Day
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone (202) 879-3939

For Defendant-Appellee Orrick, Herrington & Sutcliffe LLP:

Eric A. Shumsky
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone (202) 339-8400

Rachel Wainer Apter
Christopher J. Cariello
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, New York 10019
Telephone (212) 506-5000

Pamela Phillips
Jonathan W. Hughes
Arnold & Porter LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111
Telephone (415) 471-3100

**CERTIFICATION REQUESTED; SUBMISSION VACATED.**