[Civ. No. 4275.  Third Appellate District.—October 28, 1931.]

E. T. CLEVELAND et al., Appellants, v. WILLIAM M. GLASSELL et al., Respondents.

Arthur G. Baker, Joseph Hansen and Frank B. Amend for Appellants.

E. A. Lane for Respondents.

BURROUGHS, J., *pro tem.*—This is an action to recover the sum of $12,383.31, alleged to be due plaintiffs as commissions on the sale of real estate.  Judgment went ·for defendants, and plaintiffs appealed.

April 13, 1923, Andrew Glassell was the owner of fifty-eight acres of land near the city of Los Angeles, and desiring to subdivide the same into building lots, entered into a contract with E. T. Cleveland and M. E. Blair, the plaintiffs herein, operating under the firm name of Cleveland-Blair Realty Company, as agents, to carry out the subdivision thereof.  Said Glassell died, and his interest in said land and contract passed to William M. Glassell and Andrietta G. Somers, the defendants.  The differences between the parties concern the proper construction to be given to certain pro-

visions of said contract. The Cleveland-Blair Realty Company, hereinafter called the agents, brought this action to recover from the defendants the sum of $12,383.31, claimed to be due them for commissions on sales of lots in said tract of land.

For a clear understanding of the controversy it is necessary to state at some length the terms of said contract. By its terms the agents assumed the managerial charge of platting and improvement work provided for and were to act as selling agents of the land when subdivided. A schedule of prices for the lots was agreed upon by the parties. Among other things, paragraph 12 of the contract provides that the agent shall receive a commission of twenty per cent, to be paid as set forth in paragraphs one to eleven, inclusive, of said contract. The paragraphs above referred to provide that all moneys received from the sales of the land shall belong to the owner of the land and shall be deposited by him in a "trust fund"; that out of said "trust fund" the owner may repay himself the expenses of surveying and platting the land, and also such sums of money as he may have put into said "trust fund" from outside sources, as advancement for the improvement work; also for the cost of a water-distributing system; that at the time of the sales of the lots a first payment of twenty per cent must be made by the purchaser; that as soon as twenty per cent of the principal purchase price has been paid into the said "trust fund" the owner shall pay the agents, as part of their commissions, ten per cent of such principal purchase price, and thereafter the owner shall pay from said "trust fund" to said agents one-half of all subsequent payments made on each lot, until said agents have received a total of fifteen per cent of the principal total purchase price. Provision is then made for the payment from said "trust fund", and as a part of the expenses, such sums of money as would be required to pay for certain designated street improvements that were required to be made by the owner of the land as a condition precedent to filing the map of said tract of land with the legal custodian thereof. There is a further provision: "After the payments have been made from said 'trust fund', as hereinbefore provided, the owner shall have and retain all payments until all said land has been paid for, on a net basis of three thousand dollars ($3,000) per acre.

After all sums hereinbefore provided for, including said three thousand dollars ($3,000) per acre, have been paid, then the owner shall pay to the agents out of receipts by him hereunder the balance of the commission to which the agents are entitled, that is to say, the total commission of the agents is to be twenty per cent (20%) of the principal purchase price of each respective lot, fifteen per cent (15%) thereof being payable as hereinbefore provided and the remaining five per cent (5%) thereof being payable upon each respective lot as the principal payments (exclusive of interest payments) come in upon each lot after the costs of said platting and improvements and said three thousand dollars ($3,000) per acre have been paid and it is understood that said $3,000 per acre shall be figured net over and above all said costs and exclusive of all interest upon deferred payments, and all payments shall be deemed deferred payments until actually paid, whether the same be outstanding under contracts of purchase or under trust deeds given after delivery of deeds of conveyance." From the foregoing provision of the contract, it is perfectly clear that there shall be paid from the said "trust fund" the cost of surveying platting, improvements, the water system, the street paving, and fifteen per cent commission to the agents; that, after the aforesaid payments have been made, then the owner is entitled to retain all payments until he has received $3,000 net per acre for the entire fifty-eight acres.

However, it is claimed by the appellant that the contract is uncertain in that in the latter part of the provision of the contract above quoted, it is provided that the remaining five per cent commission is to be paid "after the costs of said platting and improvements and said three thousand dollars ($3,000) per acre have been paid. . . .". But, in answer to this claim, the first portion of the paragraph above cited, is clear that all payments, after the expenses and the fifteen per cent commissions already paid have been made, are to be retained by the owner until he has received his $3,000 per acre net for the entire tract of land, and, it will be further observed that said $3,000 per acre referred to is a net payment to the owner. In Words & Phrases, volume 5, page 4781, it is said: "The net proceeds of the sale of land is what remains of the gross proceeds after paying the expenses of sale." The word "net" is

defined as "clear of anything extraneous, with all deductions (such as charges, expenses, discounts, commissions, taxes, etc.) made". (3 Bouvier's Law Dict., Cyclopedic Law Dict.; Black's Law Dict.)

Notwithstanding the fact that in providing for the payment of the remaining five per cent of the commission to the agents, each item of cost or expense is not enumerated and the fifteen per cent of commissions already paid is not especially mentioned; the entire contract including the paragraph above quoted must be read together. The contract provides in express terms for the payment of the fifteen per cent commission and other expenses, and that all payments thereafter made, be retained by the owner until he has received the full $3,000 per acre, as the purchase price of his land, and that where the term "net" is used in the contract, it means over and above all costs and expenses, including the moneys already paid to the agents as their commissions.

The total amount of money received from the sale of lots aggregates $248,716.20. The total paid out for the expenses of surveying, platting and all improvement work aggregates $61,554.64. The fifteen per cent commission paid to the appellants, as agents, aggregates $37,359.93. These last two items make a total of $98,914.57, and, under the contract constituted a preferred claim against the "trust fund" over and above all other claims. The deduction of the last-named amount from the amount of the total sales left a balance of $149,801.63. Under the contract the next sum deductible from the "trust fund" was the purchase price of the land due the owner—said amount being at the rate of $3,000 per acre for fifty-eight acres of land—a total of $174,000. This last-named item has been paid to the extent of $149,801.63, leaving the balance due respondent of $24,-198.37, which must be paid before the agent would have been entitled to any commission. We are satisfied from the foregoing that the contract is not ambiguous and that the lower court was justified in its holding that there was nothing due the appellants.

The contract also provides that the last five per cent due the agents as commissions was not to be paid except as the principal payment came in upon each lot. There is no showing as to the amount of money which has been paid upon each

lot, and a summary of the evidence reveals that the principal payments, if paid in full, upon all lots sold are insufficient to pay the $3,000 per acre, and, consequently, there could be no further principal payments to be received to satisfy the final five per cent or any portion thereof of said commission.

The judgment is affirmed.

Thompson (R. L.), J., and Plummer, Acting P. J., concurred.