[Civ. No. 22723. Second Dist., Div. Two. July 28, 1958.]

WILLIAM S. YEOMANS, JR., Respondent, v. ELMER LYSFJORD et al., Appellants.

Gordon Stater for Appellants.

William M. Poindexter for Respondent.

FOX, P. J.—This is a suit by one former partner against the other two for an accounting. The defendants, being aggrieved by an adverse judgment, have appealed. They have also appealed from the order denying their motion for a new trial. Since there is no appeal from such an order, the purported appeal therefrom must be dismissed. (*Echols* v. *Fabyunkey,* 137 Cal.App.2d 477, 478 [290 P.2d 260].)

In January, 1952, plaintiff and defendants entered into a written partnership agreement for the purpose of conducting an accoustical tile contracting business under the fictitious name of the Aabeta Company. The defendants were each to contribute $5,000 cash and plaintiff his promissory note for $5,000. All three partners were to devote their full time to the business. The acoustical tile was a necessary material for carrying on the contemplated business. When the business first started the partnership had arrangements with a supplier for a supply of the material but this arrangement was soon cancelled by the supplier. This unexpected cancellation put the partnership business in a difficult position. Investiga-

tion of the situation led Lysfjord and Waldron to file an antitrust action for treble damages in July of 1952 against various defendants, the principal of which was the Flintkote Company. Yeomans was not made a party to the action.

On June 30, 1953, Yeomans executed an instrument by which he purported to waive any interest he might have in the antitrust suit and assign such interest to Lysfjord and Waldron. Plaintiff testified, however, that they assured him he would be entitled to one third of any recovery. On that same day the parties entered into a new partnership agreement which was to begin July 1, 1953. Just prior to this time negotiations for settlement were in progress between counsel for Lysfjord and Waldron and certain minor defendants in the antitrust suit. As a result, a settlement for $20,000 was accepted on June 26. This represented a net to the plaintiffs, Lysfjord and Waldron, of $12,000. This money was paid on July 31, 1953. The antitrust suit continued against the Flintkote Company. Counsel for Lysfjord and Waldron had never met Yeomans before the meeting in his office on June 30, 1953, to execute the assignment and the new partnership agreement. In fact, counsel did not know Yeomans was a partner with Lysfjord and Waldron when he filed the antitrust suit. At the time Yeomans signed the waiver and assignment of any interest in the antitrust suit he did not know that any settlement was in contemplation.

The partnership was dissolved by mutual consent on March 31, 1955. At that time Yeomans, without the permission of the other partners, took with him the 1952 Cadillac that belonged to the partnership. He kept the car for a year and then returned it. Yeomans secured employment elsewhere and did not further participate in the operations of the company. Lysfjord and Waldron, however, continued to operate the business.

One of the items that Yeomans sought to have included in the accounting was the $12,000 that Lysfjord and Waldron had received in partial settlement of the antitrust suit. As a defense to this claim, Lysfjord and Waldron pleaded in their answer the waiver and assignment that Yeomans had previously executed.

The trial court in effect set aside Yeomans' waiver and assignment on the ground that Lysfjord and Waldron had taken unfair advantage of him in violation of their fiduciary duty as partners. The court then included the $12,000 among the partnership assets. The trial court determined the net

worth of the partnership on the date of dissolution to be $30,148.33, and, accordingly, that Yeomans was entitled to one-third. The court then deducted from plaintiff's interest certain items of indebtedness. This left Yeomans an interest of $1,110.66 at the time of dissolution.

The court also found that the net profits realized by the business during the 18 months following the dissolution of the partnership were $22,558.08. The court then awarded plaintiff one-third of this amount, namely $7,519.36. Accordingly, judgment was entered in favor of the plaintiff for $8,630.02 ($1,110.66 plus $7,519.36).

 Defendants contend that plaintiff was not entitled to introduce evidence in an effort to set aside the waiver and assignment which he had executed since he had not pleaded fraud or unfair advantage. This contention is not well founded. The law on this subject is clearly stated in *Walsh* v. *Jacobson,* 3 Cal.App.2d 477 [39 P.2d 455]. At page 480 the court states: "It is well established by decisions of our appellate courts that where an answer filed in an action sets up a written instrument as an affirmative defense to the suit, and the plaintiff fails to file an affidavit denying the execution of such instrument as provided for in section 448 of the Code of Civil Procedure, the plaintiff is estopped from attacking the instrument only upon the grounds of its 'genuineness and due execution.' The plaintiff may, without filing any replication, which under our practice is not required because all new matter set up in the answer is deemed denied, controvert the instrument by evidence of mistake, undue influence, fraud, estoppel and any other defense that would be open if such instrument were the basis of an action. [Citations.]" (To the same effect, see *Watson* v. *Poore,* 18 Cal.2d 302, 316 [115 P.2d 478].)

 It is therefore clear that plaintiff was entitled to introduce evidence tending to establish fraud or unfair advantage on the part of his partners.

 In this connection, defendants also contend that the court erred in setting aside the instrument in question. In effect, this is simply an attack on the sufficiency of the evidence to sustain the court's finding on this issue. "Partners are trustees for each other, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by

the slightest misrepresentation, concealment, threat or adverse pressure of any kind. [Citation.]'' (*Llewelyn* v. *Levi*, 157 Cal. 31, 37 [106 P. 219]. See also Corp. Code, § 15021; *Richards* v. *Fraser*, 122 Cal. 456, 460 [55 P. 246].) ▆▆ In addition to plaintiff's testimony that he was to share in any settlement of the antitrust suit there was also testimony of three other witnesses concerning statements made by either Lysfjord or Waldron to the effect that the plaintiff was entitled to $4,000 (i.e., one-third) out of the settlement. While Lysfjord and Waldron contradicted this testimony, it was for the trial judge to resolve such conflict. The court's resolution in favor of the plaintiff is binding upon this court since there is substantial evidence to support it.

▆▆ We come now to an examination of the accounting which the court conducted. The court's calculations are set forth in the footnote.* Examination of these items discloses numerous errors. One of the items which the court charged against plaintiff's share in the partnership was his ''notes due defendants'' in the sum of $5,000. This, undoubtedly, refers to the promissory notes which Yeomans gave to Lysfjord and Waldron upon the execution of the second partnership agreement. While that agreement calls for Yeomans to execute notes in the amount of $2,500 in favor of both Lysfjord and Waldron, the notes in evidence are each in the amount of $2,758.51. There is no suggestion that these notes were invalid or ineffective for any reason and the court did not purport to set them aside. And there is no finding that

---

| | | |
|---|---|---:|
| *Net Worth—3/31/55 | | $30,148.33 |
| This figure is composed of the following items. | | |
| Net worth reflected by Ex. G | $14,832.85 | |
| 1/3 of ''Utility'' item | 815.48 | |
| Good Will | 1,800.00 | |
| Dodge Truck | 700.00 | |
| Antitrust suit settlement | 12,000.00 | |
| | | $30,148.33 |
| Plaintiff's share of Net Worth | | $10,049.44 |
| —from which must be deducted the following items: | | |
| 2/3 of material shipped to plaintiff | $ 180.34 | |
| Cadillac rental (1 yr. at $125 per mo.) | 1,500.00 | |
| Excess of plaintiff's drawing | 1,733.44 | |
| Notes due defendants | 5,000.00 | |
| Interest on notes (7% 3/31/55-9/30/56) | 525.00 | |
| | | 8,938.78 |
| Due plaintiff on dissolution | | $ 1,110.66 |

any payment had been made on these notes. It is therefore apparent that the court should have deducted the face value of these notes ($5,517.02) from plaintiff's share in the partnership. Thus, the trial court charged against plaintiff's share $517.02 less than it should have on this item.

Another item which the court deducted from plaintiff's share of the partnership consisted of 7 per cent interest on the above notes from March 31, 1955 (the date of dissolution) to September 30, 1956. Charging the above notes against plaintiff's share in the partnership as of the date of dissolution had the effect of cancelling them. Since the debts represented by these notes no longer existed, it was patent error to charge interest on them thereafter. While this latter error is in favor of plaintiff, and he has not appealed, it is, nevertheless, an item that should be taken into account on a retrial.

The next error involves the Cadillac which plaintiff took with him upon the dissolution and for the use of which he was only charged rental. Although the evidence tends to establish that plaintiff converted the car to his own use, the court nevertheless failed to make any express finding on that issue. The only reference in the findings to the car is the item charging plaintiff $125 per month rental for a period of one year. It is thus uncertain whether the trial court found that there was no conversion or simply overlooked the question. But upon either hypothesis the accounting with respect to the automobile is erroneous. If there was in fact a conversion, the plaintiff should have been charged with the value of the car as of the time of the conversion. On the other hand, if there was no conversion, it was improper to charge plaintiff rental as of the date of dissolution when no rental had as yet accrued. In this connection it must be borne in mind that the court was seeking to ascertain the value of the plaintiff's interest in the partnership as of the date of dissolution. The rental for the car accrued during the year following dissolution. Thus, it could not be taken into account in determining the value of plaintiff's share on the date of dissolution. It would have to be deducted as it accrued thereafter.

From the foregoing it is apparent that the court erroneously determined plaintiff's interest in the partnership on the date of dissolution. It is therefore necessary for a new accounting to be had in order to properly determine what interest, if any, plaintiff had in the partnership on the date of its dissolution.

■ The court also erred in awarding plaintiff one-third of the net profits ($22,558.08) from the business after the dissolution of the partnership. Under Corporations Code, section 15042, the plaintiff was entitled to make an election as to whether he would receive interest on the value of his share in the dissolved partnership or, in lieu of interest, ''the profits attributable to the use of his right in the property of the dissolved partnership. . . .'' He elected to receive his pro rata share of the profits. The court obviously erred in awarding him one-third of those profits for he did not own a one-third interest in the partnership assets upon its dissolution.

■ The rule applicable in such circumstances was stated by this court in *Vangel* v. *Vangel,* 116 Cal.App.2d 615, 628 [254 P.2d 919] : '' [W]here the business of a partnership is continued after dissolution with the employment of the assets of the retiring partner, the latter is entitled to a pro rata share of the profits, based upon the value of his interest in the partnership ascertained as of the date of dissolution. [Citations.] '' (See also *Nuland* v. *Pruyn,* 99 Cal.App.2d 603, 613-614 [222 P.2d 261].)

■ Applying these principles to the facts in the instant case, the trial court should have awarded plaintiff a share in the net profits after dissolution based upon the ratio that plaintiff's interest, if any, in the partnership at the time of dissolution bore to the total net worth of the partnership at that time. For purposes of retrial it should also be noted that under section 15018, subdivision (f), the defendants are not entitled to salaries for their services in carrying on the partnership business. In other words, plaintiff's pro rata share is based on the net profits after dissolution without any deduction for salaries to the remaining partners.

It should be noted that upon a retrial another matter should be considered by the court. After setting aside plaintiff's waiver and assignment the court concluded that plaintiff owned ''an undivided one-third interest'' in the antitrust suit. On oral argument we were advised that that litigation has been concluded. Any recovery or loss growing out of such litigation (apart from the $12,000 discussed above) must be considered in arriving at the final result herein, although such item should not be included in the assets of the partnership as of the date of dissolution since it was no more than a speculative item of indeterminable value at that time and the matter was not disposed of until almost three years after the dissolution.

The purported appeal from the order denying defendants' motion for a new trial is dismissed. The judgment is reversed with directions to take a new accounting consistent with the views expressed herein and to enter judgment accordingly.

Ashburn, J., and Herndon, J., concurred.