**John D. COFER et al., Appellants,**

**v.**

**Douglass D. HEARNE et al., Appellees.**

**No. 11775.**

Court of Civil Appeals of Texas, Austin.

Nov. 4, 1970.

Appellants' Motion and Appellees' Motions for Rehearing Denied Dec. 2, 1970.

Small, Herring, Craig, Werkenthin & Shannon, C. C. Small, Jr., Austin, for appellants.

John W. Stayton, Austin, for appellees.

HUGHES, Justice.

This controversy emanates from the dissolution of the law firm composed of equal partners, John D. Cofer, Hume Cofer and Douglass D. Hearne. The dissolution occurred December 31, 1967, when Mr. Hearne withdrew from the firm. The nature of the controversy is an accounting and settlement of partnership affairs.

The principal question of law to be determined is the rule to be applied in disposing of legal fees paid for services performed partly before and partly after the dissolution of the partnership on business that came to the partnership before its dissolution.

The Cofers, who are appellants, contend that all fees collected by the partners on business which came to the firm before its dissolution were partnership assets to be equally divided and remained so regardless of when or by which partner the work was completed.

They rely upon the rule applicable to commercial partnerships which is that after the voluntary dissolution of a partnership no partner, in the absence of an agreement, is entitled to extra compensation for winding up its affairs. See Frates v. Nichols, 167 So.2d 77 (Fla.Ct.App.).[1] Appellants rely particularly upon the case of Phoenix Land Co. v. Exall, 159 S.W. 474, Tex.Civ. App., Dallas, writ ref. (1913) which applied this rule to a law partnership. If refusal of application for writ of error had the meaning in 1913 that it has now, we would follow this case. The meaning of a refusal of writ of error prior to 1927 was examined by Mr. Gordon Simpson, later an associate justice of the Texas Supreme Court, in an article appearing in Vol. XII, p. 547, Texas Bar Journal, from which we quote:

"And it is undoubtedly true that up until the effective date (June 14, 1927) of the amendment by the 40th Legislature at its Regular Session (Chap. 144, p. 214), a refusal of an application for a writ of error did not necessarily approve the opinion of the Court of Civil Appeals either in whole or in part.

Indeed, as pointed out by Justice Hawkins in the Middleton case and as stated later in the City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W.(2d) 308, 312, a refusal of an application prior to the effective date of the 1927 amendment might not even mean that the questioned judgment, much less the opinion, was correct, since the applicant for the writ may have waived his right to complain of an erroneous ruling in both the opinion and the judgment by failing to urge the error."

■ Under these circumstances, we do not feel obligated to follow Phoenix on this point since we believe the ruling wrong. We prefer the rule and the reasoning supporting it found in Lamb v. Wilson, 3 Neb. 496, 92 N.W. 167 (1902) where in settling the affairs of a law partnership voluntarily dissolved the Court said:

"The rule of law is well settled, by the weight of authorities, that neither partner of a dissolved firm is entitled to compensation for services rendered in winding up the partnership affairs unless it is expressly agreed otherwise, or can be fairly implied from the circumstances. It seems, however, that the rule should not be extended beyond the requirement of merely winding up the partnership affairs, by collecting its outstanding claims, paying debts, and distributing the surplus among the members, and that when it appears that time, skill, and labor have been expended by a partner in the continuance of the partnership business, which inure to the general benefit, he ought to receive, from the profits from his skill and labor, a reasonable compensation, varying according to the nature of the business, the difficulties and results of the undertaking, and its ne-

---

I. See Sec. 18(1) (f) Art. 6132b providing for extra compensation to surviving partner for winding up partnership affairs.

cessity or desirability. While few cases are found which directly support this view, it seems to us to be founded upon the plainest principles of equity and justice, especially when applied to partnerships among professional men, where the profits are almost wholly the result of professional skill and labor."

To the same effect is Jones v. Marshall, 24 Idaho 678, 135 P. 841 (1913). See also In re Mondale and Johnson, 150 Mont. 534, 437 P.2d 636 (Sup.Ct.Montana 1968) and an annotation in 78 A.L.R.2d 280.

To illustrate the harshness of the rule for which appellants contend, we quote from the testimony of Mr. Hume Cofer:

"Q Now, let's go for a minute, Mr. Cofer, to the contention that you and your father are making with respect to these fees that were collected after December 31st, 1967, when the partnership was dissolved. As I understand it, if a client had come into the office on December 31st, 1967, and had employed Mr. Hearne, a lifelong friend of Mr. Hearne's, and had employed him to do some legal work, and if Mr. Hearne had accepted the employment and then had withdrawn from the firm and gone with the firm of Maloney, Black & Hearne, and had spent two years of his time thereafter working on that legal matter, and had finally realized out of it a fee of $10,000.00, that you and your father are entitled to two-thirds of that $10,000?

A Yes, sir."

We cannot bring ourselves to the voluntary acceptance of a rule which, in our opinion, is unconscionable and inequitable.

This case was tried below, in part, upon the principle that a law partner who does legal work on partnership business after the voluntary dissolution of the partnership is entitled to extra compensation for his work. We approve.

This case was tried to a jury whose findings we will note in passing upon specific points raised by the parties.

This appeal is by the Cofers. Appellee Hearne had cross assignments.

Appellants have grouped their first twelve points for briefing. These points are to the effect that the $50,000.00 Culp fee should be divided between the partners equally.

The Culp case originated in October 1967 when Mrs. Culp, according to her testimony, orally employed Mr. Hearne to represent her. She did not know either of the Cofers and did not employ them and did not know of the partnership between the Cofers and Mr. Hearne. It was the policy of the Cofer firm that any client dissatisfied with his representation could dismiss the attorney. Mrs. Culp was advised of this.

Subsequently, Mrs. Culp when advised of the friction between the Cofers and Mr. Hearne and its possible effect upon her case wrote a letter discharging the Cofers from any responsibility in her case. The jury was asked if Mrs. Culp had just cause to terminate the contract of employment that she made with the firm of Cofer, Cofer and Hearne and it answered "Yes." The Court adjudged and decreed that the Cofers were entitled to no part of the Culp fee. In this we believe there was error.

■ It is difficult for us to comprehend the effect of Mrs. Culp discharging an attorney which she testified she did not know and did not employ, insofar as this fee is concerned. If Mrs. Culp did not employ the Cofers she could not discharge them. She could tell them not to interfere. The relationship between Mrs. Culp and Mr. Hearne was one thing but the relationship between Mr. Hearne and his partners was another matter and one in which Mrs. Culp had no right to interfere except as it might affect her relation with her attorney.

We hold that the purported discharge of the Cofers by Mrs. Culp is of no materiality in this case.

We believe that the Culp fee should be decided on the basis of the portion of the total fee earned by Mr. Hearne before January 1, 1968, to be divided equally between the three partners, and the portion of the total fee earned after such date by Mr. Hearne, such amount to be subject to his sole disposition.

We sustain appellants' points to the disposition of the Culp fee to the extent above indicated, otherwise they are overruled. We overrule appellants' twenty-ninth and alternate point to the effect that we should render judgment for them on the basis of the testimony of their witness Tom Long for at least 80% of the Culp fee. Mr. Long's testimony merely presented an issue of fact.

Appellants' second group of points, thirteen through seventeen, are to the effect that the Hudson fee of $10,000.00 should be divided equally between the three parties.

Mr. Hearne was employed in this case late in 1966 to the specific exclusion therefrom of either of the Cofers. The case was tried and settled in April 1968. The jury found an agreement was made between Mr. Hume Cofer and Mr. Hearne that Mr. Hearne would complete the representation of certain clients and give the Cofers two thirds of the fees collected and that Mr. Hearne would continue in the Hudson case alone and keep all the fee. Accordingly, the Trial Court decreed that the Cofers were not entitled to any of the Hudson fee.

Mr. Hearne testified that after he advised Mr. Hume Cofer in the summer of 1967 that he would leave the firm the first of January 1968, they agreed that Mr. Hearne would complete the Fuller, Hickman and Haskell County cases and would account to the Cofers for two thirds of the fees collected and that he would continue alone in the Hudson case and retain all of the fee.

The three cases which Mr. Hearne agreed to complete were difficult cases. While most of the work in the Fuller case was done before 1968, most of the work in the other two cases was done after 1968. In fact, the Haskell County litigation was not over at the time of this trial.

Mr. Hume Cofer denied the making of this agreement but its making was substantiated by the testimony of Mr. Frank Maloney that in February 1968, Mr. Hume Cofer told him that the Cofers were making no claim to any portion of the Hudson fee.

We overrule all of appellants' points as to the Hudson fee and approve the court's disposition of it.

The evidence was sufficient legally and factually to support the verdict of the jury. The consideration for the agreement is obvious. Mr. Hearne gave up his right to more than one third of the fee in the three named cases. The Cofers were, as between the partners, relieved of the burden of trying these cases. The Cofers gave up their right to a portion of the Hudson fee to the benefit of Mr. Hearne.

While Mr. John Cofer is not shown to have participated in this agreement, there is no contention that Mr. Hume Cofer did not act for his father in all matters pertaining to this controversy.

Appellants' third group of points, eighteen through twenty-five, are to the effect that the Trial Court erred in refusing to render judgment that all fees collected by the partners after its dissolution were partnership assets and should be equally divided regardless of which partner did the work.

We have previously expressed our view on the question of law presented by these points and, in accordance therewith we overrule these points.

The twenty-sixth point made by the Cofers is that on monies advanced to Mr. Hearne during the existence of the partnership in excess of his share of the net income should carry interest at the rate of 6%

per annum from January 1st of each year for the amounts advanced during the preceding year.

The jury found that Mr. John Cofer told Mr. Hearne in January 1963, that no interest would have to be paid on the monies so advanced. We quote the testimony of Mr. Hearne on this matter:

"Q Now, was the matter of interest on these overdrafts ever discussed?

A Yes, sir, in—my first year as a partner was 1962, and at the end of that year we had our firm meeting, which would have been in January of 1963, and it was brought to my attention for the first time that I owed the firm money, and I honestly didn't understand what he was talking about.

He said 'Well, your percentage is this, and here, according to the books, you are overdrawn something over $3,000,' and I said 'Well, I didn't realize that. It didn't know it.'

He said 'Here is one thing.' He said 'Hume has done this from time to time and I do it from time to time and' he says, 'none of us will ever have to pay any interest on these overdrafts.' He said, 'I always take care of the interest myself and I deduct the interest on my tax returns and' he said, 'Neither you nor Hume will ever owe any interest to me or the firm on these overdrafts,' and that position, I think, was reiterated again. He made that same statement when he had the meeting in 1965 about that big overdraft. He said, 'Well, even if it is this much, you have gotten all this and there is no interest due and there won't be.'"

This testimony was not disputed.

The Trial Court refused to allow the recovery of interest on these advances.

We overrule this point. There was ample evidence legally and factually to support the finding of the jury.

■ Mr. John Cofer borrowed from a bank in the name of the law firm in order to make advance or excess payments to his partners.

The written partnership agreement provided, "An accounting to be made between the partners at the end of each year." There was no provision in this agreement relative to the payment of interest on advances.

The partnership agreement was subject to amendment and it was orally amended with respect to the percentage of profits payable to Mr. Hearne. We believe the offer of Mr. John Cofer to make advances to his partners without interest and accepted by them amounted to an oral amendment of the partnership agreement. Mr. John Cofer was not obligated to borrow money and make advances to his partners but upon doing so we believe he is bound by his promise not to charge interest. Mr. Cofer evidently felt that this sacrifice on his part was for the benefit of the partnership as a whole, including his interest.

We also note that loans made without charging interest are valid. 33 Tex.Jur.2d 81, Interest Sec. 12.

Appellants' twenty-seventh point is that the Trial Court erred in adjudging two thirds of the trial costs against them.

Rule 141, Texas Rules of Civil Procedure requires in the event the Trial Judge awards costs to other than the successful party under Rule 131, T.R.C.P. that he must find good cause to be stated in the record. This was not done. Since this case is to be retried in part, we refrain from deciding this point as the judgment will not be the same. The Trial Court in awarding costs should bear in mind that to be successful a plaintiff need not recover all he sues for.

Appellants' last point is that the Trial Court erred in not rendering judgment for them for $46,767.05, plus interest before and after judgment.

This point is but the cumulation of the specific points made by appellants. The amount of the judgment will be determined by the stipulation of the parties and our rulings on appellants' points as well as appellee's cross points.

Having disposed of all of appellants' points we will now consider the cross points of appellee.

The Trial Court found in his judgment, "That plaintiffs are entitled to retain the fees collected by them after the dissolution of the partnership and prior to the trial of this cause, and that the defendant Hearne is judicially estopped from claiming an interest in these fees."

Upon the trial Mr. Hearne testified on cross examination as follows:

"Q How are you going to handle the thirty-five or thirty-six thousand dollars that they have taken in by devoting their full time to work in progress and credited your full one-third to your overdraft?

A My position on that has not changed since I told Hume what it was in 1967, and that was they could have every dime from every case that they kept and worked on, and I have not changed that; I have not seen any of that money to this day.

Q Well, you know that it has been credited to a debt that you just—

A That I don't owe.

Q Now, wait a minute. You just got through saying a few minutes ago that you did owe that firm a substantial amount of money and that that debt was due and payable on January 1, 1968. Now they have given you credit on that debt?

A No, sir.

Q Now, maybe it's not—

A They have allocated that to the nine thousand five hundred dollars in 1964 and then charged me interest at the rate of six percent per annum since 1962 in express violation of an agreement. I don't call that allocating that to my debt.

Q But they have applied it to the debt as they understand it?

A They have done it exactly the way they wanted to do it, yes, sir."

In their pleading on which they went to trial appellants pleaded:

"Mr. Hearne is entiled to fees received on his account since January 1st, 1968, from business in which the firm was employed before its dissolution by him. * *

Plaintiffs allege that all attorneys fees from cases in which the firm of Cofer, Cofer & Hearne were employed, or in which any of the partners were employed, before the firm was dissolved on January 1st, 1968, are assets of the firm of Cofer, Cofer & Hearne, and that plaintiffs are entitled to a declaratory judgment to that effect.

Plaintiffs further allege that the interest in any attorneys fees from cases in which the firm of Cofer, Cofer & Hearne, or any member thereof was employed, in which Mr. Hearne has an interest should be paid to the old firm, and that Mr. Hearne's interest in such fees should be applied to the payment of his personal debt to the firm, with interest as aforesaid; and that said sums should be paid by the old firm to the debt due to John D. Cofer, principal and interest until fully satisfied."

In Appellants' Motion for Judgment, the following allocations are made:

"Plaintiffs are indebted to Defendant Hearne in the amount of $11,114.41, said sum reflecting said Defendant's share of fees collected by Plaintiffs after the dis-

solution of the partnership of Cofer, Cofer and Hearne upon legal business commenced during the existence of the partnership which had not been divided, being one-third (⅓) of such fees. * * "

Similarly, appellants introduced in evidence an exhibit reflecting appellees' interest in the fees collected by the Cofers after the dissolution of the partnership.

■ The Trial Court made his ruling on this matter on his own motion. Waiver and estoppel must be pleaded. There are no pleadings to support his ruling. If appellee is estopped by his testimony, appellants are estopped by their pleadings and evidence. There would be offsetting estoppels.

The legal position of parties are reflected by their pleadings, not by testimony.

From a careful reading of the entire statement of facts we are convinced that appellee testified as shown on the assumption that his position with reference to fees claimed by him would be accepted by appellants.

In any event, we hold that the Trial Court could not of his own motion render judgment against appellee as to these fees on the basis of appellee's testimony without giving him some opportunity to explain his position more completely.

These fees should be apportioned between the parties on the basis herein indicated.

Appellee's final cross point is that as a matter of law under the partnership agreement Mr. Hearne was to receive from the partnership a guaranteed income of $375.00, semi-monthly, irrespective of partnership earnings in any calendar year.

The partnership agreement provided:

"Douglass (appellee) to be paid $375.00 advance semi-monthly; said sum to be guaranteed by John D. Cofer and Hume Cofer."

As above indicated, the agreement also provided for an annual accounting between the partners at the end of each year.

The jury found that by their partnership agreement the partners did not agree that Mr. Hearne was to receive from the partnership a guaranteed income of $375.00 semi-monthly regardless of the earnings of the partnership in any calendar year.

Only the year 1964 is involved for the reason that only in that year did the partnership income payable to Mr. Hearne amount to less than $9,000.00.

We overrule this cross point.

■ Mr. Hearne was certainly entitled to $750.00 per month regardless of partnership income but the question, it seems to us, is whether the deficiency in partnership income could be carried over from month to month or from year to year as an offset to this guaranteed payment. Considering that the partnership was for an indefinite period and that the income to a law firm is usually sporadic, we believe a year to year carry over construction of the contract is reasonable. If this were not true then the $9,000.-00 paid Mr. Hearne in a year when there was no partnership income could not be recouped by the Cofers in the following year when his share of the income might be $50,000.00. This would be a hit or miss way to operate and in our opinion would be an unreasonable construction of the contract.

The question of the rights and liabilities of the parties if the partnership had lasted but one year and the partnership income to Mr. Hearne was less than $9,000.00 is not before us.

■ The jury has found that on certain cases, including the Culp case, the percentage of time spent by Mr. Hearne on these cases after the dissolution of the partnership. Appellants have assigned error to these findings one of which is that they do not call for a finding on an ultimate issue. We sustain this point. As stated above, the ultimate issue is the portion of the fee

earned before and after dissolution of the partnership. Certainly the time spent before and after is relevant but it is only evidentiary. There may be other elements such as the nature of the work done before and after. A lot of time might be spent on trivial matters. We do not foreclose the possibility or probability that there may be other relevant factors to be considered in resolving this issue.

The judgment of the Trial Court is reversed and this cause is remanded for further proceedings consistent with this opinion.

We consider the issues regarding the Hudson fee and interest on the debt of Mr. Hearne to be severable and direct that they not be retried. Rule 434, T.R.C.P. Their final disposition shall await the settlement of accounts between the parties and the rendition of a final judgment. See Appellate Procedure in Texas, Secs. 18.15 and 18.16.

The costs of appeal are adjudged one half to appellants and one half to appellee.

Reversed and remanded.