[No. A017873. First Dist., Div. Five. May 22, 1984.]

HOWARD H. JEWEL et al., Plaintiffs and Appellants, v.
STEWART N. BOXER et al., Defendants and Respondents.

**COUNSEL**

Socrates Mamakos for Plaintiffs and Appellants.

Kathleen Courts, White, Courts & Mitchell, Marron, Reid & Sheehy, Michael R. Marron and Quin Denvir for Defendants and Respondents.

**OPINION**

**KING,** In this case we hold that in the absence of a partnership agreement, the Uniform Partnership Act requires that attorneys' fees received on cases in progress upon dissolution of a law partnership are to be shared by the former partners according to their right to fees in the former partnership, regardless of which former partner provides legal services in the case after the dissolution. The fact that the client substitutes one of the former partners as attorney of record in place of the former partnership does not affect this result.

Howard H. Jewel and Brian O. Leary appeal from a judgment, after dissolution of the former law partnership of Jewel, Boxer and Elkind, allocating postdissolution fees on a quantum meruit basis. We reverse the judgment and remand the cause for allocation based upon the respective interests in the former partnership.

On December 2, 1977, the law firm of Jewel, Boxer and Elkind was dissolved by mutual agreement of its four partners—Howard H. Jewel,

Stewart N. Boxer, Peter F. Elkind, and Brian O. Leary. The partners formed two new firms: Jewel and Leary, and Boxer and Elkind. Three associates employed by the old firm were employed by Boxer and Elkind. The partners in the old firm not only lacked an agreement about the allocation of fees from active cases upon a dissolution of the partnership but, contrary to the sound legal advice they undoubtedly always gave their partnership clients, they had no written partnership agreement. The absence of a written partnership agreement was an invitation to litigation upon a dissolution of the partnership.

On the date of dissolution the former partnership had numerous active cases. Boxer, Elkind, and the three associates had handled most of the active personal injury and workers' compensation cases; the rest, as well as other kinds of cases, had been handled by Jewel and Leary. Shortly after dissolution, each former partner sent a letter to each client whose case he had handled for the old firm, announcing the dissolution. Enclosed in the letter was a substitution of attorney form, which was executed and returned by each client retaining the attorney who had handled the case for the old firm.[1] The new firms represented the clients under fee agreements entered into between the client and the old firm.

At issue here is the proper allocation of attorneys' fees received from these cases, some of which were still active at trial. Jewel and Leary filed a complaint for an accounting of these fees, contending they were assets of the dissolved partnership.

In a nonjury trial the court first determined that the partnership interests in income of the old firm were 30 percent for Jewel, 27 percent each for Boxer and Elkind and 16 percent for Leary. The court then allocated the disputed fees among the old and new firms by considering three factors: the time spent by each firm in the handling of each case, the source of each case (always the old firm), and, in the personal injury contingency fee cases, the result achieved by the new firm. The court assigned a value of 25 percent to the source factor, and thus allocated 25 percent of the total fees to the old firm for this factor. In the personal injury cases the court assigned values of 20 percent, 30 percent, and 40 percent for the result factor, depending on when the cases were settled or if they were tried. Remaining percentages (35 percent to 55 percent in the personal injury cases and 75 percent in the other cases) were allocated in accordance with the amount of attorney time expended upon the case before and after dissolution. Under this formula, Jewel and Leary was determined to owe $115,041.16 to the old firm, and

---

[1]Neither party challenged at trial or on appeal the authority of a former partner to execute a substitution of attorney on behalf of the dissolved partnership.

Boxer and Elkind was determined to owe $291,718.60 to the old firm. The court rendered judgment in these amounts, plus interest at the legal rate from the date of receipt of each fee on the amount due the old firm. Although we reverse the judgment, we cannot do so without expressing admiration for the laudable efforts of the learned trial judge who masterfully developed a formula geared to achieving a just and equitable result for each party.

■ Under the Uniform Partnership Act (Corp. Code, § 15001 et seq.), a dissolved partnership continues until the winding up of unfinished partnership business. (Corp. Code, § 15030.) No partner (except a surviving partner) is entitled to extra compensation for services rendered in completing unfinished business.[2] (Corp. Code, § 15018, subd. (f).) Thus, absent a contrary agreement, any income generated through the winding up of unfinished business is allocated to the former partners according to their respective interests in the partnership.

The trial court in the present case recognized these principles, but followed a Texas decision which cited no supporting authority but held that the rule precluding extra compensation for postdissolution services should not apply to a law partnership, because fees are generated by a former partner's postdissolution time, skill and labor. (*Cofer* v. *Hearne* (Tex.Civ.App. 1970) 459 S.W.2d 877, 879.) The trial court also cited *Fracasse* v. *Brent* (1972) 6 Cal.3d 784 [100 Cal.Rptr. 385, 494 P.2d 9], which held that a client has an absolute right to discharge an attorney employed under a contingent fee contract and the attorney is entitled only to the reasonable value of the services rendered before discharge.

■ Jewel and Leary contend that the court erred in failing to adhere to the rule precluding extra compensation, and should have allocated all postdissolution fees from the old firm's unfinished cases to the four former partners according to their respective percentage interests in the old firm. Boxer and Elkind argue that the substitutions of attorneys transformed the old firm's unfinished business into new firm business and removed that business from the purview of the Uniform Partnership Act, with the old firm thereafter, under *Fracasse* v. *Brent, supra,* 6 Cal.3d 784, limited to a quantum meruit recovery for services rendered before discharge.

The decision in *Cofer* v. *Hearne, supra,* 459 S.W.2d 877, was plainly wrong.[3] ■ The Uniform Partnership Act unequivocally prohibits extra

---

[2]As used in this opinion extra compensation means receipt by a former partner of the dissolved partnership of an amount of compensation which is greater than would have been received as the former partner's share of the dissolved partnership.

[3]The source of the court's error in *Cofer* v. *Hearne* might have been the court's reliance on decisions that predated the Uniform Partnership Act. (459 S.W.2d at pp. 879-880.)

compensation for postdissolution services, with a single exception for surviving partners. (Corp. Code, § 15018, subd. (f).) The definition of "business" in the Uniform Partnership Act as including "every trade, occupation, or profession" (Corp. Code, § 15002) precludes an exception for law partnerships. (*Resnick* v. *Kaplan* (1981) 49 Md.App. 499 [434 A.2d 582, 588].)

Accordingly, several courts in other states have held that after dissolution of a law partnership, income received by the former partners from cases unfinished at the time of dissolution is to be allocated on the basis of the partners' respective interests in the dissolved partnership, not on a quantum meruit basis. (*Resnick* v. *Kaplan, supra,* 434 A.2d at p. 587; *Frates* v. *Nichols* (Fla.App. 1964) 167 So.2d 77, 81; see also *Kreutzer* v. *Wallace* (Fla.App. 1977) 342 So.2d 981, 982-983.)

The decision in *Resnick* v. *Kaplan, supra,* 434 A.2d 582, is closely analogous to the present case. Resnick, a former partner in a dissolved law partnership, opened his own office and continued to represent clients of the former firm in cases for which he had been responsible before dissolution. The other partners continued to represent other clients of the old firm. (*Id.,* at pp. 584-585.) In an ensuing action for an accounting, the trial court allocated all fees collected in these cases among the former partners according to their percentage interests in the former partnership. The appellate court affirmed, stating that the Uniform Partnership Act "conferred no right upon either side to compensation for services rendered in this winding up process, [citation] and, in the absence of any provision in the partnership document, it was correctly held that the aggregate of the fees collected should be allocated according to the percentages specified in the agreement for the distribution of profits and losses." (*Id.,* at p. 587.) The court rejected the argument that different rules should apply to professional partnerships, citing the Uniform Partnership Act's express applicability to the professions. (*Id.,* at p. 588; see Corp. Code, § 15002.)

The court in *Resnick* also rejected an argument made by Boxer and Elkind in the present case (and asserted by the court below in citing *Fracasse* v. *Brent*), that clients have an absolute right to the attorney of their choice. The *Resnick* court recognized this right of clients, but said, "it does not mean, as appellant contends, that the fees thereafter earned by the partner chosen by the client are not subject to division in accordance with the partnership agreement." (*Id.,* at p. 588.) A similar conclusion was reached recently in *Rosenfeld, Meyer & Susman* v. *Cohen* (1983) 146 Cal.App.3d 200, 219 [194 Cal.Rptr. 180], in which two partners handling a large antitrust suit for a law partnership left the firm and contracted with the client to take the case with them. The court held that even though the client had

the right to the attorneys of its choice, that right was irrelevant to the rights and duties between the former partners with regard to income from unfinished partnership business. The reasoning in *Resnick* and *Rosenfeld* on this point is sound: the right of a client to the attorney of one's choice and the rights and duties as between partners with respect to income from unfinished business are distinct and do not offend one another. Once the client's fee is paid to an attorney, it is of no concern to the client how that fee is allocated among the attorney and his or her former partners. Boxer and Elkind seek to distinguish the *Rosenfeld* holding, contending it is limited to circumstances where the departing former partners act in bad faith. It is true that *Rosenfeld* involved causes of action for breach of a fiduciary duty, interference with contractual relations and conspiracy to interfere with contractual relations; however, its holding should not be limited to bad faith claims.

■ Boxer and Elkind also argue that cases involving allocation of post-dissolution income of a law partnership are distinguishable because here each client of the old firm signed a substitution of attorneys discharging the old firm and substituting one of the new firms as the attorney of record; thus, under *Fracasse* v. *Brent,* the old firm had no more than a quantum meruit interest in unfinished cases. ■ But we must look to the circumstances existing on the date of dissolution of a partnership, not events occurring thereafter, to determine whether business is unfinished business of the dissolved partnership. (*Smith* v. *Bull* (1958) 50 Cal.2d 294, 303-304 [325 P.2d 463]; *Rosenfeld, Meyer & Susman* v. *Cohen, supra,* 146 Cal.App.3d at p. 217; *Heywood* v. *Sooy* (1941) 45 Cal.App.2d 423, 426 [114 P.2d 361].) Thus, in *Rosenfeld* a client's retention of a new firm consisting of two former partners of the dissolved firm that previously handled the client's case did not transform the case into new partnership business: "It is clear that a partner completing unfinished business cannot cut off the rights of the other partners in the dissolved partnership by the tactic of entering into a 'new' contract to complete such business." (*Rosenfeld, Meyer & Susman* v. *Cohen, supra,* 146 Cal.App.3d at p. 219.)[4] ■ Accordingly, the substitutions of attorneys here did not alter the character of the cases as unfinished business of the old firm. To hold otherwise would permit a former partner of a dissolved partnership to breach the fiduciary

---

[4]The *Rosenfeld* court subsequently stated that a partner "*is entitled to the reasonable value of the services in completing the partnership business,* but he may not seize for his own account the business which was in existence during the terms of the partnership." (*Rosenfeld, Meyer & Susman* v. *Cohen, supra,* 146 Cal.App.3d at p. 220; italics added.) To the extent that the italicized excerpt might be construed as stating that the partner is entitled to compensation beyond his or her percentage interest in the former partnership, it is squarely in conflict with the rule against extra compensation. The statement makes sense only if it is construed as referring to receipt of the partner's percentage interest as compensation for the "reasonable value" of services rendered. The court's ambiguous and potentially misleading choice of words is unfortunate.

duty not to take any action with respect to unfinished partnership business for personal gain. (*Id.*, at pp. 217-220.)

There are sound policy reasons for applying the rule against extra compensation to law partnerships. The rule prevents partners from competing for the most remunerative cases during the life of the partnership in anti-. cipation that they might retain those cases should the partnership dissolve. It also discourages former partners from scrambling to take physical possession of files and seeking personal gain by soliciting a firm's existing clients upon dissolution. Boxer and Elkind argue that application of the rule in the present context will discourage continued representation of clients by the attorney of their choice, as former partners will not want to perform all of the postdissolution work on a particular case while receiving only a portion of the income generated by such work. Of course, this is all the former partners would have received had the partnership not dissolved. Additionally, the former partners will receive, in addition to their partnership portion of such income, their partnership share of income generated by the work of the other former partners, without performing any postdissolution work in those cases. On balance, the allocation of fees according to each partner's interest in the former partnership should not work an undue hardship as to any partner where each partner completes work on the partnership's cases which are active upon its dissolution.

· As previously indicated, the trial court's attempt to achieve an equitable result was laudable. At first glance, strict application of the rule against extra compensation might appear to have unjust results (e.g., where a former partner obtains a highly remunerative case just before dissolution, and nearly all work is performed after dissolution). But undue hardship should be prevented by two basic fiduciary duties owed between the former partners. ▌ First, each former partner has a duty to wind up and complete the unfinished business of the dissolved partnership. This would prevent a partner from refusing to furnish any work and imposing this obligation totally on the other partners, thus unfairly benefiting from their efforts while putting forth none of his or her own. Second, no former partner may take any action with respect to unfinished business which leads to purely personal gain. (*Rosenfeld, Meyer & Susman* v. *Cohen, supra,* 146 Cal.App.3d at pp. 216-217; see *Smith* v. *Bull, supra,* 50 Cal.2d at p. 304; *Resnick* v. *Kaplan, supra,* 434 A.2d at p. 587.) Thus, the former partners are obligated to ensure that a disproportionate burden of completing unfinished business does not fall on one former partner or one group of former partners, unless the former partners agree otherwise. It is unlikely that the partners, in discharging their mutual fiduciary duties, will be able to achieve a distribution of the burdens of completing unfinished business that corresponds precisely to their respective interests in the partnership. But partners are free to in-

clude in a written partnership agreement provisions for completion of unfinished business that ensure a degree of exactness and certainty unattainable by rules of general application. If there is any disproportionate burden of completing unfinished business here, it results from the parties' failure to have entered into a partnership agreement which could have assured such a result would not occur. The former partners must bear the consequences of their failure to provide for dissolution in a partnership agreement.

■ In short, the trial court's allocation of postdissolution income to the old and new firms on a quantum meruit basis constituted error. The appropriate remedy is to remand the cause for posttrial proceedings to allocate such income to the former partners of the old firm in accordance with their respective percentage interests in the former partnership.[5] This will also allow the trial court to allocate fees received since the trial.

■ Under the provisions of the Uniform Partnership Act, the former partners will be entitled to reimbursement for reasonable overhead expenses (excluding partners' salaries) attributable to the production of postdissolution partnership income; in other words, it is *net* postdissolution income, not gross income, that is to be allocated to the former partners. (Corp. Code, § 15015, subd. (b) [joint and several liability for debts and obligations of partnership]; Corp. Code, § 15038, subd. (1) [right of partners upon dissolution to have partnership property applied to discharge its liabilities "and the surplus applied to pay in cash the net amount owing to the respective partners"]; Corp. Code, § 15040, subds. (d) and (f) [right and obligation of partners after dissolution to contribute amounts necessary to satisfy partnership liabilities]; see *Chazan* v. *Most* (1962) 209 Cal.App.2d 519, 522-523 [25 Cal.Rptr. 864] [trial court gave credit to partners for proven post-dissolution expenses]; *Yeomans* v. *Lysfjord* (1958) 162 Cal.App.2d 357, 364 [327 P.2d 957] [trial court erred in failing to award share in net profits after dissolution].)[6] A reimbursement of reasonable and necessary overhead expenses attributable to the winding up of partnership business is certainly an equitable result. When partners fail to have a partnership agreement which determines how and to what extent such reim-

---

[5] None of the litigants asserted a cause of action for breach of the former partners' fiduciary duties to each other.

[6] In *Hawkesworth* v. *Ponzoli* (Fla.App. 1980) 388 So.2d 299, 301, the court held that former partners could not obtain reimbursement for overhead expenses indirectly attributable to the winding up of partnership business (such as office salaries, rent, and library costs), because such reimbursement would violate the rule against extra compensation for former partners. We reject this holding as being inconsistent with the provisions of the Uniform Partnership Act, and as bearing the potential for inequity where one partner or group of partners incurs a disproportionate amount of overhead expenses in winding up partnership business.

bursement should take place, they have no cause to complain about the law supplying an equitable resolution of the issue.

■ Jewel and Leary contend that Boxer and Elkind have waived any right to reimbursement for overhead expenses by failing below to seek reimbursement and introduce evidence of their overhead expenses. No waiver occurred, however, as the trial court's adoption of the quantum meruit approach, which occurred during the trial, made it pointless for Boxer and Elkind to present such evidence. The evidence may be presented in the posttrial proceedings on remand.

■ Jewel and Leary also contend that to the extent the judgment was in their favor it should have been "enhanced" by awarding interest from the date of receipt of fees at the prime interest rate (stipulated at trial to have averaged 14 percent during the period 1977-1981), rather than at the legal rate as awarded by the trial court. Boxer and Elkind respond that this is a request for a penalty not authorized in an accounting proceeding. We examine this issue for the guidance of the trial court on remand. Jewel and Leary cite no authority for their novel claim, other than to assert entitlement to "damages" for Boxer and Elkind's purported breach of fiduciary duties by retaining fees in excess of their partnership share. But Jewel and Leary's complaint did not assert a cause of action for damages for breach of fiduciary duty; it simply sought an accounting. Absent some basis for awarding compensatory or punitive damages and using the prime interest rate as the measure, the applicable rate of interest is the legal rate as prescribed by article XV, section 1, of the California Constitution.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

Low, P. J., and Haning, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 22, 1984. Mosk, J., Broussard, J., and Grodin, J., did not participate therein.