[No. A064622. First Dist., Div. Four. Oct. 12, 1994.]

ALAN GROSSMAN, Plaintiff and Respondent, v.
LAURENCE E. DAVIS et al., Defendants and Appellants.

**COUNSEL**

Musick, Peeler & Garrett and C. Donald McBride for Defendants and Appellants.

G. Judson Scott, Jr., for Plaintiff and Respondent.

**OPINION**

**POCHÉ, Acting P. J.—** A celebrated decision by Division Five of this court construed the Uniform Partnership Act (Corp. Code, § 15001 et seq.) as requiring that income generated by the winding up of a dissolved law firm's unfinished business is—absent a contrary agreement—to be allocated to the former partners according to their respective interests in the defunct partnership. (*Jewel* v. *Boxer* (1984) 156 Cal.App.3d 171, 174, 176 [203 Cal.Rptr. 13].) This principle governs regardless of: (1) which former partner provides the postdissolution services in a given case even if a substitution of counsel and new compensation agreement are executed (*id.* at pp. 174, 178); (2) whether the dissolved firm was organized as a partnership or a professional corporation (*Fox* v. *Abrams* (1985) 163 Cal.App.3d 610, 614-617 [210 Cal.Rptr. 260]); or (3) the nature of the compensation agreement with the client (*Rothman* v. *Dolin* (1993) 20 Cal.App.4th 755, 757-759 [24 Cal.Rptr.2d 571]).

The question presented is the application of this principle to these undisputed facts: Attorney Alan Grossman agreed to represent a Mr. Janes in a personal injury action. After filing suit (Janes v. Antioch Building Materials (Super. Ct. Contra Costa County, No 281245) (the *Janes I* action)), Grossman formed a partnership with fellow attorney Laurence E. Davis. Grossman and Davis had a written agreement specifying how their partnership would be conducted, but Davis rescinded it within days of its execution. The partnership thereafter operated on the basis that 60 percent of profits and fees would go to Davis, the remaining 40 percent to Grossman. Approximately 29 months after it was formed, the Grossman-Davis partnership was

dissolved. Davis was Mr. Janes's counsel when the *Janes I* action was settled the following year. As part of the settlement, one defendant paid $60,000; the remaining two, who lacked any resources, stipulated to entry of a $540,000 judgment and assigned any bad faith cause of action against their insurer to Mr. Janes. Davis prosecuted this bad faith action (Janes v. Industrial Indemnity Co. (Super. Ct. S.F. Caunty, No. 933330) (the *Janes II* action)) to a successful conclusion that produced attorney fees of $121,872.

 The initial broad scope of Grossman's complaint and Davis's cross-complaint had by the time of trial narrowed to a single point—was the *Janes II* action a component of the partnership's unfinished business, thereby entitling Grossman to 40 percent of the fees recovered? At the end of its detailed statement of decision, the trial court concluded that "the fees from *Janes II* were generated through the winding up of the unfinished business of the partnership and must be allocated to the partnership." Davis's appeal from the ensuing judgment brings the issue here.[1]

Davis's position is simple—the *Janes II* action was entirely separate from *Janes I*, had a completely different basis, was not in existence at the time of either the dissolution or the settlement of *Janes I*, and therefore cannot qualify as unfinished business of the partnership. We agree with the trial court that this reasoning uses an unduly narrow conception of what constituted unfinished business.

Following their decision to dissolve, Grossman and Davis were obligated to wind up the partnership's affairs and "complete transactions begun but not then finished." (Corp. Code, § 15033; see *Smith* v. *Bull* (1958) 50 Cal.2d 294, 304 [325 P.2d 463].) Clearly, the *Janes I* action was one such transaction. Whether *Janes II* also qualifies as unfinished business is to be ascertained from the circumstances existing at the time of the dissolution, not from events which occurred thereafter. (*Jewel* v. *Boxer, supra,* 156 Cal.App.3d 171, 178.) At the time of its dissolution, the partnership's representation of Mr. Janes was governed by a written fee agreement in which the amount of the fees varied depending upon the time of the client's "net recovery." This phrase conveys a bottom-line, cash-in-hand standard. (Cf. *Cleveland* v. *Glassell* (1931) 117 Cal.App. 713, 715-716 [4 P.2d 596]; *Brigham Young University* v. *Lumbermens Mut.* (10th Cir. 1992) 965 F.2d 830, 836.) Net recovery could not be determined until the completion of all efforts to secure compensation for Mr. Janes. Once it became

---

[1]Separate notices filed by Davis and his professional corporation purport to appeal "from the Statement of Decision and Order . . . entered on January 6, 1994." The only document bearing that date is the statement of decision, which is not itself appealable. (*Industrial Indemnity Co.* v. *City and County of San Francisco* (1990) 218 Cal.App.3d 999, 1003, fn. 3 [267 Cal.Rptr. 445].) Nevertheless, we will treat the notices as perfecting valid, if premature, appeals from the judgment entered shortly thereafter. (Cal. Rules of Court, rules 1(a), 2(c).)

apparent that two of the defendants in *Janes I* were essentially judgment-proof, the best that could be obtained was the assignment of rights against what could prove to be a solvent substitute. This would require additional efforts to realize a "net recovery" for the client. (See fn. 2, *post.*)

This was only part of what emerged from the *Janes I* settlement. That settlement bears a number of stamps which characterize it as unfinished business of the former partnership. Davis participated in the settlement process as Grossman's fiduciary (*Jewel* v. *Boxer, supra,* 156 Cal.App.3d 171, 179) and as the agent of the dissolved partnership. The settlement produced fees Davis concedes he was required to share with Grossman. It also produced, in the form of the assignment required for commencement of the *Janes II* action (see *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 889 [151 Cal.Rptr. 285, 587 P.2d 1098]), an extension of what would be needed to get any kind of respectable "net recovery" for Mr. Janes. *Janes I* and *Janes II* were inextricably linked by an identical motive—getting the maximum compensation for Mr. Janes.[2]

The idea that winding up a legal partnership's unfinished business may require the filing of new litigation is not a novelty. Just as other types of former partnerships may sue to collect debts (e.g., *Weisbrod* v. *Ely* (Wyo. 1989) 767 P.2d 171, 174; *Scaglione* v. *St. Paul-Mercury Indem. Co.* (1958) 28 N.J. 88 [145 A.2d 297, 304-305]; 59A Am.Jur.2d Partnership, § 1111, pp. 782-783), so too can dissolved legal partnerships initiate an auxiliary round of litigation to bolster or facilitate predissolution lawsuits to collect debts owed to clients. (See *McNutt* v. *Hannon* (1920) 183 Cal. 537, 541 [191 P. 1108] [probate action commenced by partner encompassed mortgage foreclosure actions instituted after partner's death and partnership's dissolution; held, the foreclosure actions were included in "partnership business . . . of closing up the business of the estate by such foreclosures" and partner's heir was entitled to percentage of fees from foreclosure action].)

The *Janes II* action was a continuation by other means of the dissolved partnership's unfinished business in *Janes I*. The trial court was therefore correct in awarding Grossman fees from *Janes II* proportionate to his partnership interest.

---

[2]As the trial court put it in the statement of decision: "Given the inability of defendants Pintail and De Jesus to respond in damages, the settlement of *Janes I* necessarily required the institution of further proceedings to provide Janes any meaningful relief as to those defendants. Thus, with substantial ingenuity, the settlement of *Janes I* was engineered by . . . Davis to include an assignment to Janes of all of Pintail and De Jesus' [possible claims against their insurer]. [¶] The $540,000 settlement as to Pintail and De Jesus was entirely ephemeral in the absence of a vehicle for collection. The assigned rights which formed the basis of the *Janes II* litigation were brought into existence during the winding-up period of the partnership dissolution." The logic of this reasoning is impeccable.

The purported appeals from the statement of decision are dismissed. The judgment is affirmed.

Perley, J., and Reardon, J., concurred.